[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1000 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1001 
Terrill W. Sanders, in his capacity as the administrator of the estate of Mary C. Bailey, deceased; Jenny Lind Bailey, as the personal representative of the estate of James E. Bailey, deceased; and Terrill W. Sanders, on behalf of the estates as minority shareholders in Corridor Enterprises, Inc., sued Corridor Enterprises and Pete M. Robbins, the majority shareholder in Corridor Enterprises, in the Jefferson Circuit Court. The plaintiffs asserted individual claims on behalf of the estates of Mary Bailey and James Bailey, and asserted shareholder-derivative claims on behalf of Corridor Enterprises.
After a bench trial on those claims, the trial court entered a judgment in favor of the Bailey estates on the individual claims and in favor of the corporation on the shareholder-derivative claims. The trial court awarded $3,269,125.91 in compensatory damages and $750,000 in punitive damages. Robbins filed a motion for a new trial, a motion for a remittitur, a motion to alter, amend, or vacate the judgment, and a motion seeking the recusal of the trial judge. The trial court denied those motions.
Robbins appeals the denial of his postjudgment motions. We affirm in part, reverse in part, and remand. *Page 1002 
 Facts[1]
In 1988, James Bailey and his wife, Mary Bailey, owned approximately 53 acres of real property in Birmingham. This property was mortgaged to SouthTrust Bank for $400,000; an individual had a second mortgage on the property in the amount of $50,000. The Baileys generated income by renting several buildings located on the property and by using a part of the land as a landfill. An underground fire developed on the portion of the property used as a landfill, and, after a hearing in May 1988, the Jefferson Circuit Court ordered the Baileys to close the landfill and to extinguish the fire. At the time that order was issued, James Bailey was 83 years old and Mary was 77 years old.
After the hearing before the Jefferson Circuit Court, Robbins approached the Baileys and offered his help in extinguishing the fire. On May 13, 1988, James Bailey, Mary Bailey, Robbins, and Otis Skinner entered into an agreement, which provided that Robbins and Skinner would extinguish the fire and that, as payment for their services, Robbins and Skinner would receive "cost [of extinguishing the fire] plus 20% not to exceed $250,000 to be secured by a lien on the property." Skinner backed out of the agreement and on June 1, 1988, James Bailey, Mary Bailey, and Robbins entered into another agreement; the terms of the second agreement differed from those of the earlier agreement.
The June 1 agreement provided that Robbins would extinguish the underground fire on the Baileys' property. In addition, the June 1 agreement provided that the parties would form a corporation; that the corporation would acquire the 53 acres owned by the Baileys; that the corporation would assume the mortgage indebtedness owed by the Baileys secured by the property and would attempt to have the Baileys released from personal liability for the amounts owed on the 53 acres or that Robbins would assume personal liability on the mortgage debt; that the corporation would issue 1,000 shares of stock, and Robbins would receive 500 of those shares, and James Bailey and Mary Bailey would each receive 250 shares for their contribution to the corporation of the 53 acres of land.
The June 1, 1988, agreement further provided that the corporation was to be a subchapter-S corporation and that profits in an amount of not less than 50% of the corporation's profits were to be distributed to the shareholders pro rata according to their stock ownership. Paragraph 12 of this agreement provided that no salaries were to be paid to Robbins for two years. After that two-year period, any salaries paid to stockholders would require approval by all of the stockholders. Additionally, after the corporation began making sufficient income to cover the monthly mortgage payments on the property, James Bailey was to receive $1,250 per month for three years.
Robbins extinguished the fire in approximately 21 days. He kept no records of the costs and expenses he incurred in extinguishing the fire, but he estimated that it cost him less than $25,000.
Pursuant to the June 1, 1988, agreement, Corridor Enterprises, Inc., was formed in October 1988. Although the agreement provided that Corridor Enterprises was to be formed as a subchapter-S corporation, Robbins failed to make the *Page 1003 
necessary election for treatment as a subchapter-S corporation. Therefore, for tax purposes Corridor Enterprises was treated simply as a corporation. Robbins served as president and director of Corridor Enterprises from the date of its incorporation. No formal corporate action was ever taken to establish a salary for Robbins. The only business Corridor Enterprises conducted at the time of its incorporation was the rental of various buildings on its property; the rental income was the sole source of income for Corridor Enterprises.
As documented by correspondence in the record, as early as June 1989, Robbins began considering the possibility of entering into the landfill business again and dumping materials on the property owned by Corridor Enterprises. In a letter written in June 1989, Robbins estimated that "[d]isposal of foundry sands can generate $10,000 a month of revenue and improve the value of this property."
On October 24, 1991, the Baileys and Robbins entered into a stock-purchase agreement. In this agreement, the Baileys agreed to sell their stock in Corridor Enterprises to Robbins for $500 per share; the Baileys also agreed not to sell their stock to a third party so long as Robbins purchased their stock at the rate of at least two shares per month.[2]
James Bailey died on February 9, 1997; he was 91 years old at the time of his death. Mary Bailey died on April 27, 1997; she was 85 years old. On September 11, 1997, Terrill Sanders was appointed as administrator of Mary Bailey's estate.[3] On September 27, 1997, Sanders was appointed as administrator of James Bailey's estate.[4] *Page 1004 
On May 6, 1998, Sanders, in his role as administrator of the estates, made a written request upon the attorney representing Corridor Enterprises, Richard Carmody, for an accounting and an inspection of the corporate books and records. Sanders received no response to this request. On May 20, 1998, Sanders sent Robbins an identical request for an accounting and an inspection of the corporate books and records; Sanders sent a copy of this second request to Carmody. Again, Sanders received no response.
On August 4, 1998, Sanders filed a complaint against Robbins in the Jefferson Circuit Court on behalf of the estate of Mary Bailey.[5] In that complaint, Sanders requested that Robbins and Corridor Enterprises be ordered to provide an accounting for the period 1991 through the date the complaint was filed, so that Sanders could determine the amount of profits of Corridor Enterprises that were owed to Mary Bailey's estate. On October 29, 1998, the trial court entered an order compelling Robbins to allow an inspection of the books and records of Corridor Enterprises.
The corporate records and books Robbins initially produced consisted only of a corporate tax return for Corridor Enterprises for the year 1992, a computer printout of the corporation's income and expenses, and a box of canceled checks and bank statements covering the period 1988 through 1991. According to the corporation's certified public accountant, Kenneth Tate, only one tax return had been prepared for Corridor Enterprises (for the year 1992) at the time of the trial court's October 29, 1998, order.[6]
However, in 1999, using information provided by Robbins and Carmody, Tate prepared the tax returns for Corridor Enterprises for the years 1993 through 1998; those returns were given to Sanders.[7] Tate testified that he did not file the tax returns for the years 1993 through 1998 with the Internal Revenue Service; he simply prepared those returns and delivered them to Robbins to file. However, Robbins did not file the returns. At the time of trial in 2002, the only corporate tax *Page 1005 
return that had been filed for Corridor Enterprises was the 1992 return.[8]
After reviewing the corporate documents and records produced by Robbins, Sanders amended the plaintiffs' complaint to allege breach of fiduciary duty; squeeze-out/oppression of minority shareholders; and refusal to allow access to the corporation's books and records.[9] On behalf of the minority shareholders of Corridor Enterprises, Sanders also alleged shareholder-derivative claims alleging breach of fiduciary duty, self-dealing, conversion of corporate assets, waste of corporate assets, and mismanagement. Sanders requested an accounting and judicial dissolution of the corporation, pursuant to §10-2B-14.30, Ala. Code 1975.
A bench trial was held on July 29, 2002. The evidence presented at that trial indicated the following.
The books and records of Corridor Enterprises revealed that, from 1991 to 2001, Corridor Enterprises had rental income totaling $367,600.75, and that, during that same period, Robbins received $258,768.57 in compensation from Corridor Enterprises. Robbins testified that he paid himself whatever was available, that the amount varied, and that the amount was not based upon any particular standard.
Robbins paid himself as compensation for the period 1991 to 2001 70% of the gross income of Corridor Enterprises despite the fact that the shareholders had taken no action to approve any
compensation for him. Robbins testified that he used the funds to pay the Baileys for their shares of stock in Corridor Enterprises, which Robbins was purchasing pursuant to the stock-purchase agreement.
Robbins failed to pay property and income taxes due for Corridor Enterprises for each year of the corporation's existence because, according to Robbins, "the corporation had insufficient income." However, the income of Corridor Enterprises, at least during 1991 through 2001, was sufficient to provide Robbins with the compensation described above. Corridor Enterprises has never declared any dividends.
The evidence also indicated that Robbins failed to report as income on his personal income-tax returns a substantial amount of the money he received from Corridor Enterprises. The evidence also indicated that Robbins used funds of Corridor Enterprises to pay expenses related to his other investments and to his personal business interests, in which Corridor Enterprises was not involved. The evidence revealed that Robbins failed to deposit all of the rental income paid to Corridor Enterprises into the corporate account; at times, Robbins deposited some of that income into his other business accounts.
In 1994, while serving as the president and director of Corridor Enterprises, Robbins began a business known as "Pete Robbins' General Hauling." In this business, Robbins engaged in the hauling and dumping of waste materials from various factories. Robbins primarily hauled foundry waste and dumped it onto the property owned by Corridor Enterprises.[10] From 1994 through 2002, Robbins's hauling *Page 1006 
business grossed $865,000. Although Robbins admitted that he originally thought that hauling and dumping foundry waste onto the corporation's property would be a corporate opportunity to promote and develop the property and to generate additional income for Corridor Enterprises, Robbins retained 100% of the income he received from this hauling business. He paid no fees or any other remuneration to Corridor Enterprises or to the Baileys for the right to dump the foundry waste onto the property owned by Corridor Enterprises. Robbins did not ensure that the foundry waste he dumped onto the property owned by Corridor Enterprises was cleared of debris or that it was properly compacted. As a result, the dumping of the foundry waste adversely affected the value and marketability of the property.[11]
Robbins claimed that Corridor Enterprises had insufficient funds to make the mortgage payments on the property to SouthTrust. After that debt, including interest and penalties for nonpayment, had accumulated to over $500,000, Robbins negotiated with SouthTrust for a satisfaction of that note in exchange for a discounted payment of $100,000. Robbins claimed that, because neither he nor the Baileys had $100,000 to satisfy the SouthTrust note, he arranged for a third party, Argyle Investments, to pay SouthTrust the $100,000. The SouthTrust mortgage was then assigned to Argyle Investments.
Robbins later paid Argyle Investments and had the mortgage assigned to him personally. The funds Robbins used to pay Argyle Investments were primarily funds from Corridor Enterprises.[12] Robbins later claimed that he had made a personal loan to Corridor Enterprises to pay off the mortgage held by Argyle Investments. As a result, Robbins began charging Corridor Enterprises interest on the purported loan. Based on information Robbins provided the corporation's accountant, Robbins received $42,000 from Corridor Enterprises as interest on this "loan." However, Robbins did not report the $42,000 as income on his personal income-tax return. Robbins admitted at trial that he was not authorized to take these actions on behalf of the corporation and that he was not authorized to hold the mortgage personally.
The evidence also indicated that Corridor Enterprises' funds were used to pay Robbins's personal legal fees. Richard Carmody, who had been Robbins's lawyer, was hired to represent Corridor Enterprises. Carmody controlled the corporation's trust account and paid Robbins's personal legal fees with funds from this account. The evidence at trial also indicated that Robbins and Carmody failed to fully and properly respond to the Baileys' repeated requests for information regarding Corridor Enterprises' books and records.
Sanders learned in April 1999 that less than one month after this action was filed, Robbins entered into a contract with Flying *Page 1007 
J, Inc., giving Flying J an option to purchase 25 acres of Corridor Enterprises' property for $3 million. Robbins entered into this contract without the consent of or notice to the minority shareholders. Robbins then borrowed $100,000 from Flying J, and, as collateral, mortgaged Corridor Enterprises' property. Robbins used the $100,000 borrowed from Flying J for his own benefit.
The sale of the property to Flying J eventually took place in 2001. However, Flying J rejected approximately 10 acres of the 25 acres because of the presence of the foundry waste Robbins had dumped onto the property. Rather than the $3 million purchase price originally negotiated by Corridor Enterprises and Flying J for the property, Corridor Enterprises received only $1.9 million for the property.
Robbins did not have a corporate tax return prepared for the year 2001, the year in which the sale to Flying J occurred. Evidence was presented at trial indicating that Corridor Enterprises faced tax penalties of over $100,000 as a result of the corporation's failure to report as capital gain the proceeds from the sale to Flying J and its failure to file a timely tax return.
On January 27, 2003, the trial court entered its judgment, concluding that Robbins had breached the fiduciary duties he owed the minority shareholders and the corporation; that Robbins "perpetrated fraud or defalcation while acting in a fiduciary capacity for Corridor [Enterprises] and that Robbins willfully and maliciously injured Corridor [Enterprises] and the property of Corridor [Enterprises]"; that Robbins engaged in acts of self-dealing and that the compensation Robbins received from Corridor Enterprises was excessive; that Robbins diverted corporate opportunities for his own advantage; that Robbins wasted corporate assets; and that Robbins was guilty of oppression and of attempting to squeeze out the minority shareholders. The trial court held that Robbins's acts of fraud, conversion, breach of fiduciary duties, oppression, and waste of the corporate assets were willful, wanton, malicious, and done with reckless disregard to the interests of the corporation and the minority shareholders.
The trial court awarded Corridor Enterprises and the estates of James Bailey and Mary Bailey a total of $3,269,125.91 in compensatory damages and $750,000 in punitive damages. The trial court itemized these damages as follows:
 — $258,768.57 for the fraudulent taking of excessive salaries or compensation;
 — $119,005 for Robbins's conversion of moneys loaned to Corridor Enterprises;
 — $111,180 for losses sustained as a result of Robbins's failure to properly and timely file corporate income tax returns;
 — $100,000 for loss of rental income caused by Robbins's actions in demolishing the rental buildings owned by Corridor Enterprises;
 — $849,772.34 for the business opportunities Robbins converted to his personal use that could have benefitted Corridor Enterprises;
 — $1,830,400 for damages caused to property owned by Corridor Enterprises as a result of Robbins's unauthorized dumping of foundry waste onto the property;
 — $750,000 as punitive damages for fraud or defalcation while Robbins was to have been acting in a fiduciary duty.
The trial court also ordered that Robbins immediately complete and file tax returns for Corridor Enterprises for those years in which returns had not been filed; that the payment of any taxes due be *Page 1008 
made from the proceeds from the Flying J sale, which had been placed in an escrow account. The trial court ordered that, after the taxes were paid, the minority shareholders receive as a declared dividend 35.7% of any of the escrowed funds that remained and that Robbins receive a pro rata share of those funds.[13] The trial court also ordered that Corridor Enterprises be dissolved pursuant to § 10-2B-14.30, Ala. Code 1975; the trial court appointed a receiver to assist in that effort. The trial court also ordered that, upon dissolution, 35.7% — a pro rata share — of this judgment be assigned to the estates of the minority shareholders. Under the "common fund" doctrine, the trial court awarded the plaintiffs' attorneys a fee of $803,825.18, which was 20% of the total judgment amount of $4,019,125.91.
On February 24, 2003, Robbins filed a motion to alter, amend, or vacate the judgment, a motion for a remittitur, or alternatively, a motion for a new trial, and a motion seeking the recusal of the trial judge from presiding further over this action. The trial court conducted a hearing on Robbins's motion for a remittitur on March 31, 2003. In an order entered April 17, 2003, the trial court denied each of Robbins's motions.
Robbins appeals, asserting the following seven claims:
 "I. The trial court improperly awarded damages for claims not [pleaded] in plaintiffs' complaint, as amended.
 "II. Robbins has been denied his right to due process by the trial court['s] entering an order that is substantially or in toto the order prepared by plaintiffs' counsel.
 "III. The individual plaintiffs' tort claims are barred by § 6-5-462, Alabama Code 1975.
 "IV. The plaintiffs' tort and equitable claims are barred by the applicable two-year statute of limitations.
 "V. The trial court improperly awarded damages to the minority shareholders for derivative claims.
 "VI. The minority shareholder plaintiffs are not entitled to recover for their claim of oppression/squeeze-out.
 "VII. The punitive damages assessed by the trial court are excessive."
 Standard of Review
The trial court entered its judgment in this case after hearing oral testimony from the parties. Therefore, the ore tenus rule applies to our review of the trial court's findings of fact. "`Under the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence.'" Ex parte Baron Services, 874 So.2d 545, 548 (Ala. 2003) (quoting Ex parte Cater, 772 So.2d 1117, 1119 (Ala. 2000)).
 "`[U]nder the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. . . . The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor *Page 1009 
and has the better opportunity to pass upon the credibility of their testimony.'"
Knight v. Beverly Health Care Bay Manor Health Care Ctr.,820 So.2d 92, 97-98 (Ala. 2001) (quoting Ex parte Pielach,681 So.2d 154, 154-55 (Ala. 1996)).
However, the "`ore tenus rule does not extend to cloak a trial judge's conclusions of law . . . with a presumption of correctness.'" Ex parte Baron Services, 874 So.2d at 549 (quoting Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala. 1999)). See also Knight, supra.
 Discussion I.
Robbins argues that the trial court improperly awarded damages for claims that were not pleaded in the plaintiffs' complaint. Robbins complains that the plaintiffs "never either factually or under any theory of law alleged liability . . . or asked for damages as a result of corporate waste." (Robbins's brief at p. 35.) Robbins likewise complains that the trial court awarded damages for loss of rental income and for the failure to file income-tax returns for Corridor Enterprises, although, Robbins argues, the plaintiffs never specifically alleged liability for or asked for damages for those matters. (Robbins's brief at p. 35.)
Rule 15(b), Ala. R. Civ. P., provides:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."
Robbins did not object to evidence concerning money damages offered during the trial. Robbins contends that Rule 15(b) does not apply because, he argues, his failure to object to such evidence at trial on the ground that it was not admitted as proof of the issues raised in the pleadings is excused because the evidence was admissible as to other claims set forth in the complaint. See McCollum v. Reeves, 521 So.2d 13, 17 (Ala. 1987).
Assuming, for the sake of argument, that the trial court awarded relief on claims not asserted in the complaint, Robbins cannot rely upon the foregoing exception to the rule of trial by implied consent because when the evidence was offered, Robbins was on notice that the minority shareholders claimed money damages against him. In the opening statement, counsel for the minority shareholders referred to an amendment to the complaint "seeking damages [for] conversion of the corporate assets, waste of the corporate assets, breach of fiduciary duty, mismanagement, and numerous other wrongdoings by Mr. Robbins while he was acting under the guise of president and director of [Corridor Enterprises]." Robbins did not object to this characterization of the claims asserted in the complaint. Later, the minority shareholders' counsel stated:
 "In sum, we believe the evidence will clearly and overwhelmingly show that Mr. Robbins has breached his fiduciary duties both to the minority shareholders and to the corporation by putting his personal interest and gain ahead of theirs. We believe the evidence will show that he has consistently and willfully engaged in conduct to deprive them of profits and interest in this corporation. And we ask that the Court after hearing the evidence to [sic] determine what those damages are and award the plaintiff the property [sic] amount of money along with the corporation being awarded whenever [sic] it should be entitled to."
(Emphasis added.) Robbins did not object to the opening statement on the basis that the relief requested there exceeded that requested in the complaint. Consequently, *Page 1010 
Robbins cannot now be heard to say that he assumed the evidence of damages was being offered solely in furtherance of his narrow reading of the issues raised in the complaint, excusing him from the necessity of objecting as the evidence was offered.
 II.
Robbins next argues that he was denied due process of law by the trial court's entering an order substantially identical to the order drafted by the lawyer for the estates. We reject this argument.
In Ex parte Masonite Corp., 681 So.2d 1068 (Ala. 1996), the defendant challenged a class-certification order that had been drafted by the plaintiffs' counsel and that was subsequently adopted by the trial court. The defendant argued that, in facilitating the drafting of the order, the trial judge and the plaintiffs' counsel had engaged in ex parte communications and that the defendant's counsel was not provided a copy of the proposed order before it was adopted by the trial court as its order and entered. The defendant's counsel argued that the defendant was prejudiced by the trial court's consideration of opposing counsel's proposed order without the benefit of hearing the defendant's objections to that proposed order.
The Masonite Court found no error or prejudice in the trial court's adoption of the proposed order because (1) the trial judge had reached a firm decision on the class certification issue before having any conversation with the plaintiffs' counsel regarding drafting a proposed order, and (2) the trial judge gave the defendant's counsel a full opportunity to argue its assertion of prejudice when counsel called to the trial judge's attention the fact that the judge had forgotten to send a copy of the proposed order to the defendant's counsel before the order was entered. Ex parte Masonite Corp., 681 So.2d at 1074 (citing and following In re Colony Square Co., 819 F.2d 272 (11th Cir. 1987)). See also Anderson v. City of Bessemer City, N.C.,470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("[O]ur previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."); Stollenwerck v. Talladega County Bd. of Educ.,420 So.2d 21 (Ala. 1982); and Boothe v. Jim Walter Res.,660 So.2d 604, 607 (Ala.Civ.App. 1995).
In this case, Robbins's counsel did not object when the trial court requested proposed orders from each party. Robbins simply argues that he was not given an opportunity to review the proposed order or to voice his detailed objections to the orderbefore the trial court adopted the language of the proposed order as its own; Robbins also takes issue with the findings of fact and the conclusions of law contained in the order.[14]
Robbins voiced extensive objections in his postjudgment motion for a new trial and at the hearing held before the trial court on that motion. Thus, the trial court was notified of Robbins's objections and was given an opportunity to correct any error the trial court discovered in its order. Robbins raises the same objections on appeal. We conclude that, under the facts of this case, Robbins has been provided an adequate opportunity to voice his objections, and those objections have been reviewed. Additionally, the trial judge made it clear that he had reached a firm decision on the merits before he ever reviewed either of the proposed orders. For these reasons, we do not find any prejudice or appearance of impropriety in the *Page 1011 
trial court's adopting as its own the order proposed by the counsel for the estates.
 III.
Robbins argues that the tort claims asserted on behalf of the estates of James Bailey and Mary Bailey are barred by § 6-5-462, Ala. Code 1975. Section 6-5-462 provides:
 "In all actions not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tortfeasor."
Relying on this statute, Robbins argues that any tort claims asserted on behalf of the Baileys that were not filed before the Baileys' deaths are now extinguished. Robbins further argues that, in this action, the claims of breach of fiduciary duty (count I) and squeeze-out/oppression (count III) are tort claims and that, because those claims were not filed before James Bailey and Mary Bailey died, they are extinguished pursuant to §6-5-462, Ala. Code 1975.
We agree with Robbins's arguments as to any attempt to assert claims on behalf of the Baileys for breach of fiduciary duty.Brooks v. Hill, 717 So.2d 759, 764 (Ala. 1998) ("A claim based on an alleged breach of the fiduciary duty owed by corporate officers under § 10-2B-8.32 [of the Alabama Code] sounds in tort."). Because a claim alleging breach of fiduciary duty is a tort claim and because no such claim was pending at the time of James Bailey's and Mary Bailey's deaths, those tort claims were extinguished by their deaths.
Robbins also contends that any claims of squeeze-out/oppression asserted on behalf of James Bailey and Mary Bailey, in their capacities as minority shareholders, sound in tort. The estates have not contended otherwise. We therefore express no opinion on that issue but simply accept Robbins's contention for purposes of this appeal. Compare Brooks, 717 So.2d at 767-68 (discussing whether a claim alleging squeeze-out/oppression of a minority shareholder in a close corporation sounds in contract or in tort). Because James Bailey's and Mary Bailey's individual claims for squeeze-out/oppression were not pending at the times of their deaths, for purposes of this appeal we conclude that any such claims asserted on their behalf were extinguished at the time of their deaths. § 6-5-462, Ala. Code 1975.
However, we do not read the complaint as stating a claim on behalf of James and Mary Bailey individually; we read the complaint as asserting those claims on behalf of the estates of James Bailey and Mary Bailey. When this action was filed, James Bailey and Mary Bailey were deceased; the estates of James Bailey and Mary Bailey were the minority shareholders in Corridor Enterprises. It is the estates that alleged that Robbins had breached the fiduciary duties owed them as minority shareholders in the corporation and that Robbins was liable for the tort of oppression and trying to squeeze them out of the corporation; therefore, § 6-5-462, Ala. Code 1975, does not bar the tort claims brought by those estates.
However, components of the damages awards described in the trial court's order relate to activities that occurred before the decedents died. To the extent that those damages arise from tort injuries sustained by the individual decedents before their deaths and for which no *Page 1012 
action was commenced during their respective lives, those damages are not recoverable. As stated above, the tort claims of the decedents were extinguished upon their deaths because no action was then pending. § 6-5-462, Ala. Code 1975. If the claims are extinguished, then all possibility of recovering damages for those claims is also extinguished. Thus, the trial court's judgment insofar as it awards damages must be reversed and this cause remanded for a new determination of damages. On remand, we instruct the trial court to determine the extent, if any, to which any damages awarded to the corporation or to the estates in its order of January 27, 2003, arose from tort injuries sustained by the individual decedents before their respective deaths and are, therefore, not recoverable in this action.
 IV.
Robbins argues that the claims asserted by the estates that are not derivative claims are barred by the two-year statute of limitations found in § 6-2-38, Ala. Code 1975. He argues that the "undisputed evidence" presented at trial established that, more than two years before this action was filed, the Baileys had "such knowledge . . . sufficient to provoke inquiry in reasonable minds which would have led to the facts on which the claims in this action are based." Jefferson County Truck Growers Ass'n v.Tanner, 341 So.2d 485, 488 (Ala. 1977). We reject this argument.
As previously noted, James Bailey and Mary Bailey have not asserted personal claims against Robbins. The claims of breach of fiduciary duty and squeeze-out/oppression asserted in this action were asserted by the estate of James Bailey and the estate of Mary Bailey, not by James Bailey and Mary Bailey. Thus, the issue to be considered is when the minority shareholders had knowledge of, or had reason to know of, the activities that resulted in their alleged injuries.
The estates of James Bailey and Mary Bailey became minority shareholders in Corridor Enterprises in 1997, after James and Mary died. The evidence established that Robbins engaged in malfeasance and oppression, that he breached his fiduciary duties, and that he attempted to squeeze out the minority shareholders after the estates became the minority shareholders in Corridor Enterprises. For example, in 1998, Robbins used funds of Corridor Enterprises to purchase real estate in his own name, to invest in other businesses in his own name, and to purchase personal property for himself; he refused to provide an accounting of the corporate finances when he was requested to do so; he failed to pay the corporate property and income taxes, failed to have tax returns prepared and filed, and failed to maintain proper corporate records; he entered into a contract to sell property belonging to Corridor Enterprises without notice to or approval of the minority shareholders; and he failed to declare dividends during the entire time the estates were shareholders while he paid himself an exorbitant salary and drained the corporate funds.
The minority shareholders filed their complaint on August 4, 1998, within approximately a year of becoming shareholders and in the same year that many of the above-described activities occurred. Therefore, the estates' claims of breach of fiduciary duty and squeeze-out/oppression were not time-barred to the extent those claims sought to recover damages for injuries occurring to the estates and not to the decedents. However, as discussed above, the estates are not entitled to recover any damages based on claims that Robbins breached his fiduciary duty to the Baileys or on claims that Robbins attempted to *Page 1013 
squeeze out or oppress the Baileys while they were minority shareholders. Such a recovery would be inconsistent with §6-5-462, Ala. Code 1975.
We also address this issue in the context of the shareholder-derivative claim asserted by the estates on behalf of Corridor Enterprises. That derivative claim was not defeated by the Baileys' deaths, but any derivative claim that arose during the Baileys' lives and asserted by the estates in this action must be one that the Baileys could have enforced, were they alive to do so.[15] See § 6-5-464, Ala. Code 1975, providing for survival of unfiled equitable claims when "but for their [deceased persons'] death, [they] could have enforced such claims." See also Okeke v. Craig, 782 So.2d 281 (Ala. 2000), stating that a wrongful-death action where the wrongful death was allegedly caused by medical malpractice could proceed, but limiting relief to instances where "`the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.'" 782 So.2d at 283 n. 2 (quoting § 6-5-410, Ala. Code 1975). In Okeke, this Court held that "[a] wrongful-death action is barred by the statute of limitations if the decedent, on the date of her death, would have been time-barred from filing a medical-malpractice claim based on the medical malpractice that is alleged to have caused the death." 782 So.2d at 283.
In its order, the trial court does not specifically address whether the Baileys, during their lifetimes, had notice of all or some of the wrongful acts directed at the corporation and attributed to Robbins more than two years before they died. However, Robbins argued the limitations bar in support of his motion for a new trial; the trial court denied the motion. The trial court heard ore tenus evidence. Thus, any conflicting evidence as to the extent of the Baileys' knowledge of Robbins's activities during their lifetimes was resolved by the trial court in favor of the estates, as shareholders. The trial court was in the best position to weigh the evidence. Every presumption will be indulged in favor of the trial court's findings; those findings were not palpably wrong, and they will not be disturbed on appeal. Jefferson County Truck Growers Ass'n v. Tanner,341 So.2d 485, 490 (Ala. 1977); Lockett v. Coleman, 293 Ala. 613,308 So.2d 689 (1974).
 V.
Robbins argues that the trial court erred in awarding damages to the estates — the minority shareholders — on the shareholder-derivative claim. As stated above, when this action was filed, the estate of James Bailey and the estate of Mary Bailey were the minority shareholders in Corridor Enterprises. In their role as minority shareholders, the estates brought a shareholder-derivative claim on behalf of the corporation, alleging that Robbins had breached the fiduciary duties he owed the corporation, that he had breached his duty to avoid self-dealing, and that he had breached his duty to remain loyal to the corporation.
As Robbins correctly argues, minority shareholders are not entitled to recover damages in a shareholder-derivative *Page 1014 
action. See, e.g., James v. James, 768 So.2d 356 (Ala. 2000) (a minority shareholder cannot parlay a wrong committed primarily against the corporation, which gives rise to a derivative claim only, into a personal recovery); Stallworth v. AmSouth Bank,709 So.2d 458 (Ala. 1997) (same). In a shareholder-derivative action, the claims are asserted on behalf of a corporation; therefore, only the corporation is entitled to recover damages on those claims. If the corporation recovers damages as a result of the derivative action, the minority shareholders benefit indirectly by virtue of their ownership in the corporation. However, an award of damages directly to the minority shareholders on a shareholder-derivative claim is improper.
In this case, the trial court determined that Robbins was liable for injury to the corporation on the shareholder-derivative claims. The trial court also determined that Robbins's conduct was intended to oppress and squeeze out the minority shareholders. However, every award of damages made by the trial court was "in favor of Corridor Enterprises, Inc. and the plaintiffs." None of the damages awarded by the trial court was specifically made for the claims asserted by the estates of breach of fiduciary duty or for squeeze-out/oppression of a minority shareholder, and, as noted above, the individual shareholders may not share in the corporation's recovery on the shareholder-derivative claims.
Because each award of damages was made jointly to the corporation and to the minority shareholders, the manner in which the trial court structured its damages award is improper. We are unable to determine whether the trial court intended all or some portion of the awards made "in favor of Corridor Enterprises, Inc. and the plaintiffs" to represent a recovery for the estates on their claims or whether all of those awards were made on the basis of the shareholder-derivative claims. We point out that we find no error in the trial court's determination that Robbins is liable on the shareholder-derivative claims and no error in the trial court's determination that Robbins is liable for oppression and attempting to squeeze out the minority shareholders (the estates). We simply find that the trial court's order, as it pertains to damages, is improper.
As noted earlier, we reverse the judgment and remand this cause on the issue of damages. On remand, we instruct the trial court to clarify its order and, if necessary, to correct the amount of damages awarded. The trial court should consider whether awards should be made to the estates and Corridor Enterprises separately, or, alternatively, whether only the language of the order need be altered. We express no opinion on these issues; we simply point them out for the trial court's consideration.
 VI.
Robbins next argues that the estates are not entitled to recover on their claim of squeeze-out/oppression. Robbins argues that the lack of a fair market in which to sell the minority shares of Corridor Enterprises is an essential component of a claim of squeeze-out/oppression and that the Baileys did not lack a fair market at the time they entered into the stock-purchase agreement with Robbins. Therefore, Robbins asserts, the Baileys' estates cannot establish all of the essential components of a claim of squeeze-out/oppression.
However, we need not analyze the fair-market issue in this case for two reasons. First, we have already established that we are not dealing with claims asserted by James Bailey and Mary Bailey; we are dealing with claims asserted by the estates of James Bailey and Mary Bailey. Therefore, *Page 1015 
it is in 1997 and 1998, when the estates held the corporate shares, that we must determine whether a fair market existed in which to sell those shares. We need not revisit the market conditions that existed in 1991 when James Bailey and Mary Bailey entered into the stock-purchase agreement with Robbins.
Second, the trial court found this case to be closely aligned with the examples of oppression and squeeze out of minority shareholders provided in F.H. O'Neal and R. Thompson, O'Neal'sOppression of Minority Shareholders § 3.02 (2d ed. 1985):
 "Here are a few illustrations [of squeeze-out/oppression]. The squeezers may refuse to declare dividends; they may drain off the corporation's earnings by exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, by high rental agreements for property the corporation leases from majority shareholders, or by unreasonable payments under contracts between the corporation and majority shareholders; they may deprive minority shareholders of corporate offices and of employment by the company; they may cause the corporation to sell its assets at an inadequate price to the majority shareholders or to companies in which the majority are interested; they may organize a new company in which the minority will have no interest, transfer the corporation's assets or business to it, and perhaps then dissolve the old corporation; or they may bring about the merger or consolidation of the corporation under a plan unfair to the minority. As indicated, the techniques listed here merely illustrate the techniques which resourceful squeezers may utilize."
See also Ex parte Brown, 562 So.2d 485, 492-93 (Ala. 1990). In its order of January 27, 2003, the trial court stated:
 "The illustrations given by O'Neal and Thompson [, O'Neal's Oppression of Minority Shareholders (2d ed. 1985),] are so closely aligned with the facts of this case that there can be no question that Robbins'[s] conduct was intended to oppress and squeeze-out Corridor [Enterprises'] minority shareholders. Robbins was the only shareholder who ever received any benefit from the income earned by Corridor [Enterprises]. Robbins never declared payment of dividends to the minority shareholders because he was draining off all income in excessive salaries or compensation to himself. Robbins secreted and controlled all financial information related to Corridor [Enterprises]. He failed to obtain approval or even advise the minority of monies paid to himself, of monies generated by using Corridor [Enterprises'] property, of contracts for the sale of Corridor [Enterprises'] property or the mortgage of Corridor [Enterprises's] property."
These findings are supported by the evidence, and they are not clearly erroneous. We have reviewed each instance of Robbins's misconduct cited by the trial court as supporting the squeeze-out/oppression claim; we note that this misconduct occurred both before and after the Baileys' deaths. Thus, Robbins's misconduct would have constituted squeeze-out/oppression against both the Baileys and the estates.
However, as discussed earlier in this opinion, because no claim of squeeze-out/oppression was pending at the time of the Baileys' deaths and because the issue was uncontested in this case, we treated that claim as sounding in tort.[16] Thus, we *Page 1016 
concluded that any claim of squeeze-out/oppression asserted on behalf of the Baileys was extinguished at the times of their deaths and that the only claim of squeeze-out/oppression asserted in this action was asserted on behalf of the estates. Thus, we note that on remand the only damages recoverable for the squeeze-out/oppression claim of the estates are those damages sustained by the estates as a result of Robbins's misconduct and not any damages sustained by the Baileys.
 VII.
Robbins lastly argues that the punitive damages assessed by the trial court are excessive. The trial court found that "Robbins'[s] acts of fraud, conversion, breach of fiduciary duties, acts of oppression and waste of the corporate assets for his personal benefit and to the injury of Corridor [Enterprises] and its minority shareholders were willful, wanton, malicious and with reckless disregard to the interest of the plaintiffs." For this reason, the trial court awarded Corridor Enterprises and the Bailey estates $750,000 in punitive damages.
Punitive-damages awards are subject to a de novo standard of review. See National Ins. Ass'n v. Sockwell, 829 So.2d 111, 135
(Ala. 2002), citing Acceptance Ins. Co. v. Brown, 832 So.2d 1
(Ala. 2001), citing in turn Cooper Indus., Inc. v. LeathermanTool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674
(2001). In reviewing a punitive-damages award, this Court evaluates the award in light of the "guideposts" established inBMW of North America, Inc. v. Gore, 517 U.S. 559,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and the factors recognized by this Court in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).
However, one of the components required for our review of a punitive-damages award is a consideration of the ratio of the punitive damages to the compensatory damages. Because we are remanding this cause to the trial court for reconsideration of the damages, the amount of compensatory damages or punitive damages, or both, may change on remand. Therefore, a review of the punitive damages awarded by the trial court in its January 27, 2003, order would be premature at this time, and we need not address this issue.
 Conclusion
We affirm that portion of the trial court's judgment entered in favor of Corridor Enterprises on its shareholder-derivative claims. We also affirm that portion of the trial court's judgment entered in favor of the estate of Mary Bailey and the estate of James Bailey on their claims of breach of fiduciary duties and squeeze-out/oppression of minority shareholders. We reverse that portion of the trial court's judgment that relates to damages awarded to Corridor Enterprises and the estates. We remand this cause to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
[1] In drafting these facts, we rely heavily upon the trial court's January 27, 2003, order. Although Robbins contests certain findings of fact and conclusions of law contained in that order, he has not challenged those facts that are set out in this opinion and on which we rely.
[2] In 1998, Sanders filed a separate action in the Jefferson Circuit Court alleging that Robbins had breached the stock-purchase agreement and seeking to terminate that agreement. That action was styled Terrill W. Sanders, as administrator ofthe estate of Mary C. Bailey, deceased v. Pete M. Robbins, CV-98-4667, and was assigned to Judge Edward L. Ramsey. Robbins did not answer the complaint, and a default judgment was entered against him. On February 2, 1999, Judge Ramsey issued an order terminating the stock-purchase agreement between the Baileys and Robbins, and declaring that the estate of Mary Bailey owned 248 shares in Corridor Enterprises, that the estate of James Bailey owned 248 shares in Corridor Enterprises, and that Robbins owned 504 shares in Corridor Enterprises.
On October 15, 2001, Judge Ramsey entered another order, indicating that the matter had come before the court for trial. In that order, Judge Ramsey concluded that, pursuant to the stock-purchase agreement, Robbins had purchased 143 shares of the Baileys' stock and that he began paying the Baileys for their stock on October 17, 1991, and continued those payments until sometime in 1997. It was undisputed that Robbins used the funds of Corridor Enterprises to pay the Baileys for their stock. However, Judge Ramsey specifically found that the Baileys became aware of this fact in August 1994 and that by failing to object further to Robbins's using the corporation's funds to make those payments, the Baileys consented to this procedure.
The trial court also concluded that Robbins had partially performed under the contract and that his failure to continue to make payments under the stock-purchase agreement after his last payment in 1997, did not justify a termination of Robbins's right to purchase additional shares of stock from the Baileys' estates after James Bailey and Mary Bailey died. (James Bailey died in February 1997 and Mary Bailey died in April 1997.) The trial court concluded that Robbins could elect to continue purchasing two shares of stock per month if he did so by the tenth day of each month.
[3] Sanders served as the Jefferson County administrator from 1989 to 2001.
[4] James M. Tingle was later appointed as the successor administrator of the estate of James Bailey. A will executed by James Bailey was subsequently discovered and offered for probate. Jenny Lind Bailey was named in the will as the personal representative of the estate of James Bailey. She was substituted as the real party in interest on July 25, 2002.
[5] Sanders originally filed the action only in the name of the estate of Mary Bailey because at the time the action was filed Sanders believed that only the estate of Mary Bailey had a potential ownership interest in Corridor Enterprises. It was originally believed that James Bailey and Mary Bailey had owned their shares of stock in Corridor Enterprises jointly with a right of survivorship. Because James Bailey died before Mary Bailey, Sanders originally believed that all of James Bailey's shares of stock in Corridor Enterprises, if he owned any shares at the time of his death, passed into the hands of Mary Bailey upon his death. Under this same premise, upon Mary Bailey's death, all of Mary Bailey's shares (which would have included those acquired from James Bailey) would have passed into her estate. However, Sanders later discovered that the Baileys owned their shares individually without a right of survivorship. At that time, he added James Bailey's estate as a plaintiff.
[6] According to Tate, Corridor Enterprises did not file a corporate tax return until the year 1992 although Corridor Enterprises was incorporated in 1988. Based on information provided by Robbins, Tate originally prepared a form 1120-S, which is a corporate return for a subchapter-S corporation. The Internal Revenue Service subsequently notified Tate that Corridor Enterprises was not a subchapter-S corporation and that the return must be corrected and refiled.
[7] Tate testified that all of the information used by him to prepare these tax returns was obtained from Robbins or from two different computer programs maintained by Robbins. Tate did not review any paper records or perform an audit to verify the accuracy of the information Robbins provided to him.
[8] At trial, Robbins's lawyer stipulated that the 1992 corporate tax return had been filed with the Internal Revenue Service but that the corporate tax returns for Corridor Enterprises for the years 1993-1998 and Robbins's personal tax returns for the years 1992-1998 had not yet been filed with the Internal Revenue Service.
[9] The complaint was amended on March 17, 1999, and again on May 12, 1999.
[10] Robbins did not obtain nor did he cause the corporation to obtain a permit to allow the dumping of waste materials onto the corporate property.
[11] Expert testimony at trial established that, unless the problems caused by the negligent manner in which Robbins had dumped the waste materials onto the property were rectified, the property was unsuitable for structural development. The expert who testified as to the unsuitability of the property testified that it would cost between $1,830,400 and $3,203,200 to restore the property.
[12] In 1995 Robbins wrote a check on the account of Corridor Enterprises for $6,882.52 to Carmody's law firm. Robbins claimed that the check represented a payment for legal fees owed by Corridor Enterprises, but the law firm immediately endorsed the check to Argyle Investments. Robbins also paid Argyle Investments $51,000 of the $75,000 Corridor Enterprises received in a condemnation proceeding.
[13] The trial court directed that Robbins's "dividend" be retained and applied toward the payment of the judgment.
[14] The parties apparently did not exchange copies of the proposed orders they drafted.
[15] Shareholder-derivative actions are historically equitable in nature. Finance, Inv. Rediscount Co. v. Wells,409 So.2d 1341, 1341 (Ala. 1981). All equitable claims upon which no action has been filed survive in favor of the personal representative of a decedent who, but for death, could have enforced such claims. §6-5-464, Ala. Code 1975. Therefore, the shareholder-derivative claim asserted by the estates in this action does not present a survivability problem.
[16] As discussed earlier in the opinion, the estates did not contest Robbins's argument that the claim of squeeze-out/oppression sounded in tort. Therefore, we expressed no opinion on that issue. *Page 1017