Rel: February 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

––––––––––––––––––––––––

## 1210383

––––––––––––––––––––––––

## Georgia Lay

### v.

## Todd Destafino

### Appeal from Shelby Circuit Court
### (CV-19-900158)

PER CURIAM.

This case arises out of a protracted feud between two ex-relatives.

In short, Todd Destafino had a longstanding business relationship with

his (now former) mother-in-law, Georgia Lay, that soured after Destafino and Lay's daughter divorced. In the aftermath of the divorce, Lay began interfering with Destafino's property and business interests. Destafino eventually sued, claiming that Lay had trespassed on his property, interfered with his business operations, created a nuisance, and improperly failed to acknowledge his ownership interest in a company that he and Lay had jointly formed. After a bench trial, the Shelby Circuit Court entered judgment in Destafino's favor, awarding him $167,369.03. Lay appealed. For the reasons explained below, we affirm the trial court's judgment.

## Facts and Procedural History

During the time frame relevant to this case, Destafino and Lay were both small-business owners. Destafino had his own construction company, while Lay owned a medical-supply sales business. Destafino was married to Lay's daughter, Auderia Destafino, making him Lay's son-in-law.

In 2012, Destafino began renting space in a building located on Old Highway 280 in Chelsea ("the property"), which he used to operate his construction company. Not long after his lease began, Destafino allowed

Lay to move her business into a portion of his rented space. Destafino also completed extensive renovations -- which took three months and cost over $50,000 -- to improve the portion of the property that Lay used for her business.

When Destafino's landlord discovered that Destafino was allowing an unauthorized subtenant to use the property, he served Destafino with a notice of eviction. But instead of moving out, Destafino and Lay decided to purchase the property from the landlord. To facilitate their purchase, they formed a company called BDSC, Inc. Lay signed BDSC's incorporation papers, listed herself as BDSC's registered agent, listed both herself and Destafino as the individuals responsible for seeking incorporation, and listed both herself and Destafino as BDSC's directors.

A few days after its formation, BDSC purchased the property from Destafino's landlord for $228,000 via a promissory note and a mortgage back to the seller. Destafino and Lay each signed a personal guarantee of the note and have each made equal, monthly payments on the note since the purchase.

Things apparently went smoothly for Destafino and Lay up until around 2016, when Destafino and Auderia divorced. Shortly thereafter,

Lay and Destafino "start[ed] having problems." Those problems reached a boiling point in 2018, when Lay began removing equipment and other property from Destafino's portion of the property. Then, in early 2019, Lay installed a new lock on Destafino's office and refused to give him a key, effectively preventing him from accessing his office.

Shortly after the lockout, Destafino brought this suit against Lay, claiming that she had trespassed on his property, interfered with his business operations, and created a nuisance. But Destafino's suit did little to deter Lay's behavior. Just a few days after Destafino filed his complaint, Lay removed him from the utility and bank accounts associated with BDSC and the property. Destafino promptly filed a motion for emergency relief, which the trial court granted. The trial court's order enjoined Lay from disposing of any of Destafino's things and from interfering with his access to the property, and it ordered her to reinstate Destafino on the accounts associated with BDSC and the property.

Despite the trial court's order, Lay continued interfering with Destafino's equipment and his ability to access the property. For example, Lay took some wooden doors belonging to Destafino and used

4

them to construct a chicken coop; took additional doors and used them as a stand for her lawnmower; removed one of Destafino's toolboxes; used Destafino's metal duct work as a burn barrel; obstructed the sign for Destafino's business; prevented Destafino's vehicles from entering and exiting the premises; and dumped so much unauthorized trash into Destafino's dumpsters that he had to make (and pay for) separate disposal arrangements.

Destafino eventually amended his complaint to add claims related to ownership of the property and the management of BDSC. In particular, the amended complaint alleged that BDSC did not have a regular corporate structure and claimed that Lay had fraudulently misrepresented Destafino's relationship with, and financial obligations to, the corporation. The amended complaint requested declaratory relief, a sale for division of the property, an award of attorney fees, and any "other, further[,] and different relief to which [Destafino] may be entitled."

The case went to a bench trial in the spring of 2021. In support of the claims set out in his amended complaint, Destafino argued during the trial that he was entitled to an equal ownership interest in BDSC and its

assets because he had provided half the funds that the company used to purchase and manage the property. He pointed out that he had paid at least half of the taxes, utility bills, and payments on the note relating to the property. And while Destafino acknowledged that he had contributed only $18,600 in cash toward the initial payment on the property (whereas Lay had contributed $41,842.56), he testified that he and Lay had agreed -- as a condition to their joint purchase of the property -- that Destafino would be entitled to a credit for prepurchase rent payments and for the value of the prepurchase renovations that he had performed on Lay's portion of the property.

After the trial ended, the trial court entered a final judgment finding in Destafino's favor on all of his claims. The trial court's judgment further provided:

"Accordingly, it is ORDERED and ADJUDGED as follows:

"….

"3. … [Lay,] as the sole shareholder of BDSC Inc., shall immediately make reimbursement to [Destafino] for the following:

"a. Eighteen Thousand Six Hundred and no/100 dollars ($18,600.00) for the initial payment for the property, made at closing;

6

"b. Sixty Five Thousand Eight Hundred Eight and 15/100 dollars ($65,808.15) for the restoration remodel of [Lay's portion of the property];

"c. Seven Thousand Nine Hundred Sixty and 88/100 dollars ($7,960.88) for payment of ½ property taxes from 2014-2020."

"4. The Court further FINDS that [Destafino] is due to be compensated by [Lay] in the amount of Seventy Five Thousand and no/100 dollars ($75,000.00), for compensatory and punitive damages in this matter, including the necessity of [Destafino] to hire legal counsel and file suit. Said damages were caused by [Lay's] knowing and willful trespass on to [Destafino's] business area, the unauthorized use of [Destafino's] business materials and the encroaching on [Destafino's] business operations; together with [Lay's] knowing and willful interference in [Destafino's] continuing business operations, and [Lay's] knowing and willful nuisance, annoyance and interference with the use of the property by [Destafino] in the daily ongoing operation of his business.

"5. The total judgment amount in favor of [Destafino], against [Lay], in this matter, is One Hundred Sixty Seven Thousand Three Hundred Sixty Nine and 03/100 Dollars ($167,369.03) …."

Lay timely appealed.

### Standard of Review

Because the trial court conducted a bench trial at which oral testimony was given, the ore tenus rule governs our review. That rule provides that, when a trial court hears ore tenus testimony, its findings

7

on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless clearly erroneous and against the great weight of the evidence. Sadler v. Players Recreation Grp., LLC, [Ms. 1210116, Aug. 26, 2022] ___ So. 3d ___ (Ala. 2022). The ore tenus standard of review applies to both the trial court's findings of liability and its assessment of damages. Radetic v. Murphy, 71 So. 3d 642, 648 (Ala. 2011). Though we must presume that the trial court's findings of fact are correct, we review its legal conclusions and application of law to facts de novo. Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005).

## Discussion

Lay's appeal raises numerous challenges to the trial court's judgment. Though she frames her arguments as challenging only the trial court's damages award -- rather than its underlying determination of liability -- some of her arguments implicate substantive disputes about the scope of liability. We address Lay's arguments in turn and, for the reasons explained below, conclude that each of them fails.

### A. Lay Failed to Preserve Her Argument That the Trial Court Erred by Not Itemizing Damages

We first consider Lay's argument that the trial court failed to fully itemize its damages award in accordance with state law. As relevant here, Alabama law requires:

> "In any civil action based upon tort …, the damages assessed by the factfinder shall be itemized as follows:
>
>> "(1) Past damages.
>>
>> "(2) Future damages.
>>
>> "(3) Punitive damages.
>
> "… Where the court determines that any one or more of the above categories is not recoverable in the action, those categories shall be omitted from the itemization."

§ 6-11-1, Ala. Code 1975. Lay argues that part "4" of the trial court's damages award violated this requirement by lumping together "compensatory and punitive damages" into a single $75,000 sum.

Though Destafino does not contest the applicability of § 6-11-1, he argues that Lay waived her ability to appeal the trial court's error by not bringing that error "to the attention of the [t]rial [c]ourt" in the first instance. Destafino's brief at 24-25. In support of this argument, Destafino relies on Green Tree Acceptance, Inc. v. Standridge, 565 So. 2d

9

38 (Ala. 1990), in which this Court refused to reverse a jury's award of damages based on noncompliance with § 6-11-1. This Court explained in Green Tree that we will not reverse an award of damages based on an itemization error that was not first brought to the attention of the trial court. Id. at 46. That holding was in keeping with our general rule that appellate courts "cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal." State Farm Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 807, 821 (Ala. 2005).

Lay responds by arguing that Green Tree is distinguishable because Green Tree, unlike this case, involved a jury trial -- meaning that the parties had an opportunity in advance of the verdict to review (and object to) a set of instructions and verdict forms telling jurors how to classify and compute damages. Lay suggests that since she lacked such notice of how the trial court would frame its damages award, she also lacked an opportunity to raise her objection to the trial court in the first instance and therefore cannot be faulted for failing to object.

We disagree. Even though Lay may not have had a prejudgment opportunity to object to the trial court's classification of damages, she did have an opportunity to object after judgment. Namely, she could have filed a timely motion to alter, amend, or vacate the judgment under Rule 59(e), Ala. R. Civ. P. While it is true that postjudgment motions under Rule 59(e) are usually elective rather than mandatory, such a motion is necessary to preserve an objection for appellate review when -- as here -- that motion is the only possible mechanism for bringing the alleged error to the trial court's attention. That is true even in the context of a bench trial. See Kitchens v. Maye, 623 So. 2d 1082 (Ala. 1993). Accordingly, we hold that Lay failed to preserve her § 6-11-1 objection by not giving the trial court a chance to correct its alleged error in the first instance.

B. Lay's Remaining Arguments Lack Merit

Lay raises several other objections to the trial court's judgment, but -- for the reasons explained below -- each fails.

First, Lay says that the trial court erred by ordering her to reimburse Destafino for the money he spent remodeling her portion of the property. She points out that the trial court's award of remodeling costs was based on oral testimony, and she argues that the admission of

such testimony violates the parol-evidence rule, which "'provides that, absent some evidence of fraud, mistake, or illegality, a party to <u>an unambiguous written contract</u> cannot offer parol, or extrinsic, evidence of prior or contemporaneous oral agreements to change, alter, or contradict the terms of the contract.'" <u>Alabama Elec. Coop., Inc. v. Bailey's Constr. Co.</u>, 950 So. 2d 280, 287 (Ala. 2006) (citation omitted; emphasis added). There is an obvious problem with Lay's parol-evidence argument: as the preceding quote makes clear, the parol-evidence rule applies only to "written contract[s]," not oral contracts, and the agreement between Lay and Destafino was oral.[1] Accordingly, the bar on parol evidence has no application to this case.

---

[1]Lay argues elsewhere that any oral agreement (and any award of damages related to it) would have been void under a provision of the Alabama Statute of Frauds, which requires any "promise to answer for the debt … of another" to be expressed "in writing." § 8-9-2(3), Ala. Code 1975. This argument fails because Lay provides no reason to conclude that her and Destafino's agreement to purchase property involved a promise to assume the debt of another. Lay could not have been assuming Destafino's debt, because the credit for renovations was an amount owed <u>to</u> Destafino, not an amount owed <u>by</u> him. And Lay could not have been assuming the debt of Destafino's prior landlord because, by Lay's own admission, the landlord was not obligated to compensate Destafino for improvements that Destafino made to the property while he was a tenant.

Lay fights this conclusion by arguing that the oral agreement was later reduced to a written agreement because it was briefly summarized in the unsigned minutes to one of BDSC's board meetings.[2]  Lay's reply brief at 4.  That argument also fails.  Lay does not cite, and we are not aware of, any authority holding that an unsigned, after-the-fact written summary of an oral agreement displaces the original agreement for purposes of the parol-evidence rule.

Lay also seems to suggest that the trial court lacked authority to order her to reimburse Destafino for his remodeling costs because those costs were not listed in Destafino's original or amended complaints.  But Lay does not develop this argument or cite any authority related to it.  This Court has explained, in other circumstances, that trial courts may award damages not pleaded in the complaint so long as the evidence

---

Lay later theorizes, in her reply brief, that the oral agreement violated a different subsection of the Statute of Frauds -- subsection (6), which requires the purchase of real estate to be in writing -- but Lay failed to preserve this theory by not raising it in her opening brief.  See Sverdrup Tech., Inc. v. Robinson, 36 So. 3d 34, 46-47 (Ala. 2009) ("[T]his Court will not consider arguments raised for the first time in a reply brief.").

[2]Those minutes were signed by Auderia (who described herself as BDSC's "secretary") and by one other witness but were not signed by either Lay or Destafino.

justifies such an award and the defendant had fair notice of the claims on which the award is based. See, e.g., Robbins v. Sanders, 890 So. 2d 998, 1009 (Ala. 2004); Roberson v. Ammons, 477 So. 2d 957, 960 (Ala. 1985); accord Rule 54(c), Ala. R. Civ. P. ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."). Lay does not explain why that logic should not apply here, nor does she argue that she lacked fair notice of the claim giving rise to the trial court's award. Accordingly, we cannot conclude that the trial court erred.

Lay next takes issue with the trial court's holding that she trespassed on Destafino's portion of the property. She argues that since "[y]ou cannot trespass on or interfere with possession of your own property," she -- as an owner of BDSC, which in turn owned the property on which Destafino's office space was located -- cannot have committed trespass on Destafino's office space. Lay's brief at 24. Accordingly, she argues, the trial court could not have considered trespass in computing its damages award. Id. at 23-24.

There are multiple problems with this argument. For one thing, it overlooks the fact that Lay and BDSC are separate legal entities. See Econ Mktg., Inc. v. Leisure Am. Resorts, Inc., 664 So. 2d 869, 870 (Ala. 1994) ("'"The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in this state."'" (citations omitted)). For another, Lay does not cite, and we are not aware of, any authority supporting her assertion that a landlord cannot trespass against her tenant. Typically, it is the right to possession, not ownership, that is protected against trespass, and a tenant can have a right to exclusive possession of property (or a portion of that property) even if he does not own it. See Johnson v. Northpointe Apartments, 744 So. 2d 899, 902 (Ala. 1999) ("'A tenant, having an estate in land, has the general and exclusive right of possession during the term. He may exclude third persons and, with few exceptions, the landlord as well.'" (citation omitted)); Jefferies v. Bush, 608 So. 2d 361, 362 (Ala. 1992) ("Trespass is a wrong against the right of possession."); see also Peltier v. Roy, 453 F. Supp. 1373, 1375 (D.R.I. 1978) ("The fact that Plaintiff may have had an ownership interest in the property does not preclude the possibility that he was trespassing. The right to possession, not ownership, is the more

dispositive consideration; thus even a landlord may properly be sued in trespass by his tenant." (collecting cases)). We therefore reject Lay's argument that she was legally incapable of committing trespass.

Lay next argues that even if she did trespass, the trial court still could not consider her trespass in computing its damages award because, according to her, Destafino did not prove that Lay's trespass reduced the value of his property. Even if Lay is correct in asserting that Destafino did not introduce evidence showing diminution in property value, her argument fails because it overlooks the trial court's authority to award nominal damages. See Martin v. Glass, 84 So. 3d 131, 134 (Ala. Civ. App. 2011). Moreover, "'[o]nce actual damages, even nominal damages, are established'" in a trespass action, "'punitive damages may be awarded if it is a proper case to do so.'" Id. (citation omitted).

The availability of punitive damages brings us to Lay's next argument -- that the trial court's award of punitive damages was per se improper under Alabama law because § 6-11-20, Ala. Code 1975, provides, in pertinent part, that "[p]unitive damages may not be awarded in any civil action … other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately

engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Lay does not make any particularized argument as to why the award of punitive damages violated § 6-11-20. Instead, she simply recites the statutory standard and then asks this Court to "review the [trial-court] pleadings and the transcript" in their entirety, in search for any potential "errors regarding [the trial court's] award of punitive damages." Lay's brief at 25. Lay seems to believe that we are obligated to conduct such a search because of the de novo standard of review that applies to any award of punitive damages. See Pensacola Motor Sales, Inc. v. Daphne Auto., LLC, 155 So. 3d 930 (Ala. 2013).

Again, Lay is mistaken. The de novo standard of review does not relieve an appellant of her burden of demonstrating that the trial court erred. Under our precedent and the Rules of Appellate Procedure, an appellant -- even one seeking de novo review -- must make reasoned and particularized arguments in support of reversal. See, e.g., Archer ex rel. Archer v. Estate of Archer, 45 So. 3d 1259, 1266 (Ala. 2010) (applying a de novo standard of review, yet refusing to entertain an argument unsupported by specific citations to the record and to authority, explaining that "'"'"it is neither our duty nor function to perform all the

legal research for an appellant"'"'" (citations omitted)); White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008) ("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position.  If they do not, the arguments are waived."); accord Rule 28(a), Ala. R. App. P.  After an appellant has fulfilled that threshold obligation, this Court will review the relevant aspects of the trial court's decision de novo (that is, without a presumption of correctness).  But an appellant who has not performed that threshold function has failed at the outset to carry her burden of presentation and, accordingly, cannot prevail on appeal.  Archer, 45 So. 3d at 1266.  That is the position Lay is in here.  She has not made a reasoned argument as to why the trial court lacks authority to award punitive damages, so we will not reverse the trial court's award.

Lay's final argument is that the trial court improperly admitted certain evidence.  In particular, she complains that the trial court should not have admitted certain social-media posts by Auderia or testimony about "family problems extending from Lay's care of Destafino's daughter."  Lay's brief at 19-20.  But Lay does explain why the admission

of this evidence was improper under the applicable rules of evidence or how that admission prejudiced her. The trial court's final judgment contains no mention of -- let alone findings related to -- those items of evidence. Accordingly, Lay has again failed to demonstrate reversible error.

For all these reasons, we affirm the trial court's judgment.

AFFIRMED.

Parker, C.J., and Shaw, Wise, Bryan, Stewart, Mitchell, and Cook, JJ., concur.

Sellers and Mendheim, JJ., concur in the result.