Chiman Patel appeals a judgment in favor of his nephew, Bharat Patel, and Bharat's wife, Daksha Patel, for $85,908 in compensatory damages and $225,000 in punitive damages on their claim that Chiman fraudulently misrepresented the profitability of a motel they purchased from him in 1993. We affirm.
Bharat and Daksha Patel immigrated from India. After living a while in Atlanta, they returned to India for a time. Upon returning to America, they moved to Birmingham and worked for Bharat's uncle, Chiman Patel. They worked for him for approximately 3 years in an unrelated business before seeking his advice regarding purchasing a business of their own. Chiman Patel offered to sell them the Town Motel in Birmingham. He told them that he would sell the motel to them for $450,000 and the testimony at trial indicated that he also told them they could expect to earn $70,000 to $75,000 in profit per year from operating the motel. The plaintiffs said the uncle told them that the purchase price was discounted for them "because they were relatives," and they alleged that because of their culture they did not question Patel's representations to them.
The plaintiffs bought the motel from the uncle for $450,000. The purchase price was financed by loans secured by a first mortgage and also by a second mortgage held by the uncle. The uncle later foreclosed on the second mortgage, after the plaintiffs were unable to make their payments. Despite the representations made to Bharat and Daksha, the evidence at trial indicated that both before the sale to them and after he had taken back the motel through foreclosure of the second mortgage, Chiman Patel offered it for sale for $300,000. In addition thereto, the plaintiffs contend that the uncle did not inform them that the short-term rentals that made up much of the motel's income were illegal. Without the illegal income derived from the short-term rentals, the plaintiffs were unable to make all the mortgage payments on the motel.[1]
Bharat and Daksha Patel sued the uncle, alleging fraud and breach of contract. The court directed a verdict on the breach of contract claim. The fraud claim was submitted to the jury, which awarded $85,908 in compensatory damages and $450,000 in punitive damages. Following a Hammond/Green Oil[2] hearing, the punitive damages award was reduced to $225,000. The trial court's order requiring a remittitur of the punitive award stated:
 "The plaintiffs, Bharat and Daksha Patel, brought this action against Bharat Patel's uncle, Chiman Patel. They alleged that Chiman Patel was guilty of fraud in connection with the sale of the Town Motel in Birmingham in 1993 and 1994. The disputed question of fact which was presented to the jury was whether Chiman Patel misrepresented the profitability of the motel to Bharat and Daksha Patel at the time of the sale and, if so, whether they reasonably relied on the misrepresentation to their detriment. The case was tried on August 6,7, and 8, 1996, resulting in a verdict in favor of the plaintiffs for $85,908 compensatory damages and $450,000 punitive damages.
". . . .
 "On February 14, 1997, the Court heard arguments of counsel, received legal briefs and took testimony. The parties provided the Court with a transcript of the trial. The Court has carefully reviewed all of the submissions.
 "The defendant contends that he should have a new trial because (1) the verdict was against the great weight of the evidence and (2) the jury's damages award was excessive. He argues, in the alternative, that the Court should grant a remittitur.
 "This case was tried and submitted to the jury on the issue of fraud. At the close of the plaintiffs' case, the defendant moved for a judgment as a matter of law *Page 161 
on the issue of breach of contract. The plaintiffs agreed that there was no evidence to support [a finding of] breach of contract and [the breach of contract claim] was dismissed. Defendant's counsel stated, 'I'm not making the motion for directed verdict as to the fraud.' (Transcript, page 227.) [The plaintiffs were] represented by competent counsel and it was clear to all that there was substantial evidence to support the plaintiffs' charge of fraud. The Court observed the parties and their attorneys during the trial of this well-prepared and well-presented case. Nothing occurred during the trial which had any prejudicial effect on the jury. The transcript of the evidence confirms this conclusion. The verdict was the product of a properly functioning jury. Defendant's contention that the plaintiffs' verdict was contrary to the weight of the evidence is due to be denied.
 "The more troubling issue is that of excessiveness. The Alabama trial courts are awaiting new guidelines expected to be announced in decisions from the Alabama Supreme Court [following remands from the United States Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and Life Insurance Co. of Georgia v. Johnson, ___ U.S. ___, 117 S.Ct. 288, 136 L.Ed.2d 207 (1996)]. Until those cases are decided, in considering the issue of excessiveness this Court is bound by the standards announced in the cases of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).
 "The movant bears the burden of proving that the verdict was excessive. McDowell v. Key, 557 So.2d 1243, 1249 (Ala. 1990). The jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160
(Ala. 1988).
 The Hammond and Green Oil decisions require the trial court to state for the record the facts considered by it in either granting or denying a motion for new trial based upon the alleged excessiveness of a jury verdict. In compliance with this mandate, the Court will address the Green Oil
factors as to which the defendant offered proof at the post-trial hearing.
 "First, the defendant argues that the award of compensatory damages in the amount of $85,908 was excessive. The amount of the award itself is strong evidence of the attention given by the jury to the evidence and to the Court's charge. The award is precisely the amount of money which the plaintiffs paid as a result of their purchasing the motel from the defendant. It was the total of their earnest money, their down payment and the mortgage payments made by the plaintiffs during the time they had possession of the motel. The compensatory damages are not excessive.
 "The Court has considered the degree of reprehensibility of the defendant's conduct. The jury found from the evidence that Chiman Patel sold this rundown, crime-infested motel to his nephew for $450,000. He gave him a 'special deal' because of their family relationship. The evidence was that Chiman Patel tried to sell the motel to strangers for far less both before and after the sale to the plaintiffs. This is one example of defendant's many misrepresentations to the plaintiffs.
 "The defendant is a sophisticated businessman who is knowledgeable about the motel business in this area. On the other hand, the plaintiffs are recent immigrants from India who are anything but sophisticated in business transactions. They accepted the defendant's representations about the motel without further investigation because, [they said,] 'in our culture, we just take the word of our elders.' (Transcript, page 77.) The jury found that the plaintiffs placed their trust and confidence in their uncle Chiman Patel because of their familial relationship and their cultural background. He breached that trust.
 "The transcript shows that the evidence heard by the jury clearly supports the jury's finding that Chiman Patel made false representations to the plaintiffs and that he knew the statements to be false. There was substantial evidence from which the jury could reasonably infer that the *Page 162 
representations made by Chiman Patel were made with the intent and purpose of deceiving the plaintiffs. His conduct was reprehensible in his dealings with the plaintiffs and warranted the imposition of punitive damages.
 "It was clear to the Court and, apparently to the jury, that the defendant and certain witnesses he called were less than candid in their testimony. He showed no remorse for the harm which he has inflicted upon the plaintiffs.
 "Immediately following the judgment in this case, there was a flurry of activity designed to divest Mr. Patel of assets which could be used to satisfy the judgment. He has testified that upon advice of counsel those transfers have been rescinded.
 "The defendant profited from selling the Town Motel to the plaintiffs. He received at least the $75,000 which the plaintiffs had to beg and borrow from friends and family to make the down payment on their purchase.
 "The remaining Green Oil factor argued by the defendant is the impact of the verdict upon the defendant. [A punitive damages award 'ought to sting in order to deter,' but its purpose is not to destroy.] Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125, 127 (Ala. 1981). [Jones, J., concurring specially]. The defendant has a tangled web of ownership interests in several motels in this part of the country. It is difficult to determine from the evidence just what his financial condition is at this time and how severely the judgment will impact his finances. To further complicate the confusing financial picture, there is evidence that the defendant often deals in cash. His testimony is that the judgment would be devastating.
 "The Court has compared this verdict with other punitive damages awards in fraud cases but it is difficult to make such comparisons without having full knowledge of the relevant facts in the other cases. Nevertheless, in consideration of all of the factors brought to the Court's attention, this Court finds that the jury punished Mr. Patel too severely.
"Conclusion
 "After a review of the record of the trial, as well as the evidence presented at the February 14, 1997, hearing under the Hammond and Green Oil
factors, the Court finds that the $450,000 punitive damages award should be reduced by one-half. The Court hereby orders remittitur of the punitive damages award from $450,000 to $225,000. The compensatory damages award will remain at $85,908.
"It is, therefore, ORDERED AND ADJUDGED:
 "1. The motion for new trial is denied on the condition that the plaintiffs file with this Court on or before February 28, 1997, a remittitur of punitive damages to the sum of $225,000, for a total judgment of $310,908. Otherwise, defendant's motion for a new trial will be granted.[3]
"2. Costs are taxed to the defendant."
C.R. at 174-80. This Court on May 9, 1997, issued the "new guidelines" referred to in the trial judge's order. See BMW ofNorth America, Inc. v. Gore, 701 So.2d 507 (Ala. 1997). We agree with the trial judge that there was sufficient evidence of fraud for the issue to be submitted to the jury.
On appeal, the defendant contends that, even with the remittitur, the punitive damages award is excessive. We will, therefore, review the propriety of the remitted punitive damages award pursuant to the guidelines set out in our May 9, 1997, BMW v. Gore opinion.
First, in reviewing the propriety of the $225,000 punitive damages award, we look to the (1) degree of reprehensibility involved in this case, (2) the ratio of the punitive damages award to the compensatory damages award and (3) the imposition of criminal or civil penalties for similar conduct. See BMW v.Gore, supra, 701 So.2d at 509. See also, Hillcrest Center, Inc.v. Rone, [Ms. 1940535, Aug. 1, 1997], ___ So.2d ___ (Ala. 1997). Based on our review of the evidence, we find Chiman Patel's representations to *Page 163 
Bharat and Daksha Patel, which resulted in their purchasing the Town Motel, significantly reprehensible. The plaintiffs were relatives of Chiman Patel; they relied on their family relationship, as well as the elder Patel's expertise in the field, to guide them in the purchase of a business. He took advantage of their trust and, instead of giving them honest guidance, relieved himself of the financial drain of operating an unprofitable motel. Chiman Patel was experienced in real estate dealings, and he knew what he was doing when he offered this "special deal" to his unsuspecting relatives. His actions warrant the imposition of punitive damages. There are no comparable civil or criminal penalties for similar conduct, but, given the facts of this case, we do not find the ratio of punitive damages to compensatory damages, approximately 2.6:1, to be out of line.
Additionally, applying the factors set forth inHammond and Green Oil, we consider the effect of the punitive award on the financial status of the defendant. As the trial court indicated, it would be difficult to make a good estimate of the value of Chiman Patel's assets, because of his many business interests and his penchant for dealing in cash. Nevertheless, we find that the punitive award constitutes approximately 7.5% of the defendant's net worth.[4] The payment of this award will certainly sting, but, in our opinion, it will not cripple the defendant financially. In addition, as remitted, the award clearly removes any profit recognized by the defendant as a result of his actions. Finally, the plaintiffs' costs of litigating this case, which ended with a three-day trial, taken by themselves, certainly would not support a $450,000 punitive damages award, nor would they, considered alone, support the remitted award of $225,000. However, considering the guideposts of BMW v. Gore, supra, as well as the Hammond/Green Oil factors, we conclude that the judgment of the trial court is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, SHORES, HOUSTON, KENNEDY, and BUTTS, JJ., concur.
MADDOX and SEE, JJ., concur in the result.
[1] The plaintiffs made the payments on the first mortgage, but were unable to make payments on the second mortgage.
[2] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986); GreenOil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).
[3] The plaintiffs filed the $225,000 remittitur. C.R. at 190.
[4] Although the testimony indicated that the defendant's net worth was difficult to ascertain, there was evidence that in 1994 he had represented it to be a little over $3,000,000.