This is the second appeal resulting from an action brought by the respective personal representatives of the estates of the two minority stockholders in Corridor Enterprises, Inc., against Pete M. Robbins, the majority shareholder in the corporation. The plaintiffs asserted individual claims on behalf of the estates and shareholder-derivative claims on behalf of the corporation. For a full discussion of the factual and procedural history of the lawsuit, the details of the order of the Jefferson Circuit Court entered following a bench trial awarding damages to the shareholder estates and Corridor Enterprises against Robbins and the seven issues Robbins raised on his appeal, see our opinion inRobbins v. Sanders, 890 So.2d 998 (Ala. 2004) ("Robbins I"). We will hereinafter discuss the facts and procedural events only as necessary for our discussion of the issues presented on this second appeal.
In Robbins I we agreed with Robbins that any tort claims the husband and wife minority stockholders, James B. Bailey and Mary C. Bailey, were entitled to assert *Page 779 
against Robbins during their lifetime, but which were not the subject of any action filed by them during their lifetimes, were extinguished at the time of their deaths, pursuant to the "survival" provisions of § 6-5-462, Ala. Code 1975. We explained, however, that this case actually involved no such tort claims:
 "[W]e do not read the complaint as stating a claim on behalf of James and Mary Bailey individually; we read the complaint as asserting those claims on behalf of the estates of James Bailey and Mary Bailey. When this action was filed, James Bailey and Mary Bailey were deceased; the estates of James Bailey and Mary Bailey were the minority shareholders in Corridor Enterprises. It is the estates that alleged that Robbins had breached the fiduciary duties owed them as minority shareholders in the corporation and that Robbins was liable for the tort of oppression and trying to squeeze them out of the corporation; therefore, § 6-5-462, Ala. Code 1975, does not bar the tort claims brought by those estates."
890 So.2d at 1011.
We then noted:
 "However, components of the damages awards described in the trial court's order relate to activities that occurred before the decedents died. To the extent that those damages arise from tort injuries sustained by the individual decedents before their deaths and for which no action was commenced during their respective lives, those damages are not recoverable. As stated above, the tort claims of the decedents were extinguished upon their deaths because no action was then pending. § 6-5-462, Ala. Code 1975. If the claims are extinguished, then all possibility of recovering damages for those claims is also extinguished. Thus, the trial court's judgment insofar as it awards damages must be reversed and this cause remanded for a new determination of damages. On remand, we instruct the trial court to determine the extent, if any, to which any damages awarded to the corporation or to the estates in its order . . . arose from tort injuries sustained by the individual decedents before their respective deaths and are, therefore, not recoverable in this action."
890 So.2d at 1011-12.
Our opinion in Robbins I also disposed of Robbins's contention that "the claims asserted by the estates that are not derivative claims are barred by the two-year statute of limitations found in § 6-2-38, Ala. Code 1975." 890 So.2d at 1012. Robbins argued that the undisputed evidence revealed that the Baileys knew enough facts during their lifetimes, and more than two years before the action was filed, to trigger the running of the two-year statute of limitations. Quoting Jefferson CountyTruck Growers Ass'n v. Tanner, 341 So.2d 485, 488 (Ala. 1977), Robbins argued that "the Baileys had `such knowledge . . . sufficient to provoke inquiry in reasonable minds which would have led to the facts on which the claims in this action are based.'" 890 So.2d at 1012. We answered that contention as follows:
 "As previously noted, James Bailey and Mary Bailey have not asserted personal claims against Robbins. The claims of breach of fiduciary duty and squeeze-out/oppression asserted in this action were asserted by the estate of James Bailey and the estate of Mary Bailey, not by James Bailey and Mary Bailey. Thus, the issue to be considered is when the minority shareholders had knowledge of, or had reason to know of, the activities that resulted in their alleged injuries. *Page 780 
 "The estates of James Bailey and Mary Bailey became minority shareholders in Corridor Enterprises in 1997, after James and Mary died."[1]
890 So.2d at 1012.
We went on to explain that the evidence established that Robbins had engaged in tortious conduct toward the minority shareholders "after the estates became the minority shareholders in Corridor Enterprises." Id.
 "The minority shareholders filed their complaint on August 4, 1998, within approximately a year of becoming shareholders and in the same year that many of the above-described activities occurred. Therefore, the estates' claims of breach of fiduciary duty and squeeze-out/oppression were not time-barred to the extent those claims sought to recover damages for injuries occurring to the estates and not to the decedents. However, as discussed above, the estates are not entitled to recover any damages based on claims that Robbins breached his fiduciary duty to the Baileys or on claims that Robbins attempted to squeeze out or oppress the Baileys while they were minority shareholders."
890 So.2d at 1012-13.
We also addressed the "survivability" issue and the statute-of-limitations issue "in the context of the shareholder-derivative claim asserted by the estates on behalf of Corridor Enterprises." 890 So.2d at 1013. Our analysis and determinations on those issues were as follows:
 "That derivative claim was not defeated by the Baileys' deaths, but any derivative claim that arose during the Baileys' lives and asserted by the estates in this action must be one that the Baileys could have enforced, were they alive to do so.[15] See § 6-5-464, Ala. Code 1975, providing for survival of unfiled equitable claims when `but for their [deceased persons'] death, [they] could have enforced such claims.' . . .
 "In its order, the trial court does not specifically address whether the Baileys, during their lifetimes, had notice of all or some of the wrongful acts directed at the corporation and attributed to Robbins more than two years before they died. However, Robbins argued the limitations bar in support of his motion for a new trial; the trial court denied the motion. The trial court heard ore tenus evidence. Thus, any conflicting evidence as to the extent of the Baileys' knowledge of Robbins's activities during their lifetimes was resolved by the trial court in favor of the estates, as shareholders. The trial court was in the best position to weigh the evidence. Every presumption will be indulged in favor of the trial court's findings; those findings were not palpably wrong, and they will not be disturbed on appeal. Jefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485, 490 (Ala. 1977); Lockett v. Coleman, 293 Ala. 613, 308 So.2d 689 (1974).
 "[15] Shareholder-derivative actions are historically equitable in nature. Finance, Inv. Rediscount Co. v. Wells, 409 So.2d 1341, 1341 (Ala. 1981). All equitable claims upon which no action has been filed survive in favor of the personal representative of a decedent who, but for death, could have enforced such claims. § 6-5-464, Ala. Code 1975. Therefore, the shareholder-derivative claim asserted by the estates in this *Page 781 
action does not present a survivability problem."
890 So.2d at 1013.
On another point, we agreed with Robbins's contention that minority shareholders are not entitled to recover damages in a shareholder-derivative action. "[A]n award of damages directly to the minority shareholders on a shareholder-derivative claim is improper" because "the individual shareholders may not share in the corporation's recovery on the shareholder-derivative claims."890 So.2d at 1014. Consequently, because "every award of damages as made by the trial court was `in favor of Corridor Enterprises, Inc. and the plaintiffs'" we held that "the manner in which the trial court structured its damages award is improper."890 So.2d at 1014.
 "We are unable to determine whether the trial court intended all or some portion of the awards made `in favor of Corridor Enterprises, Inc. and the plaintiffs' to represent a recovery for the estates on their claims or whether all of those awards were made on the basis of the shareholder-derivative claims. We point out that we find no error in the trial court's determination that Robbins is liable on the shareholder-derivative claims and no error in the trial court's determination that Robbins is liable for oppression and attempting to squeeze out the minority shareholders (the estates). We simply find that the trial court's order, as it pertains to damages, is improper.
 "As noted earlier, we reverse the judgment and remand this cause on the issue of damages. On remand, we instruct the trial court to clarify its order and, if necessary, to correct the amount of damages awarded. The trial court should consider whether awards should be made to the estates and Corridor Enterprises separately, or, alternatively, whether only the language of the order need be altered. We express no opinion on these issues; we simply point them out for the trial court's consideration."
890 So.2d at 1014.
Lastly, we declined to address on the merits Robbins's contention that the punitive damages assessed against him in favor of Corridor Enterprises and the Baileys' estates in the amount of $750,000 were excessive, because "one of the components required for our review of a punitive-damages award is a consideration of the ratio of the punitive damages to the compensatory damages," and "the amount of compensatory damages or punitive damages or both, may change on remand."890 So.2d at 1016.
On remand, the Jefferson Circuit Court directed the parties to file written briefs stating their respective positions and on September 3, 2004, following receipt and consideration of those briefs, the trial court issued an order noting this Court's instructions in Robbins I and undertaking to restate and restructure damages in accordance with the court's understanding of those instructions, resulting in awards to the minority-shareholder estates, on the one hand, and to Corridor Enterprises, on the other hand, allocating between them the same total damages the court had awarded in the order that was the subject of Robbins I. In the process, the court stated its "specific determination . . . that there were no damages requested by the minority shareholders, or ordered by this Court to the minority shareholders that arose prior to the decedents' deaths."
On this second appeal from that award, Robbins again raises seven issues, which he frames as follows:
 "I. Whether the trial court improperly awarded damages to the minority shareholders for derivative claims? *Page 782 
 "II. Whether the plaintiffs' claims were barred by Section 6-5-462, [Ala. Code 1975,] in that certain claims asserted by the plaintiffs did not survive the deaths of the plaintiffs?
 "III. Whether there was substantial evidence presented at the trial that would authorize the award of punitive damages to the plaintiffs and whether the amount of punitive damages awarded was excessive?
 "IV. Whether the plaintiff estates can recover for the tort of squeeze-out and oppression since no claim for squeeze-out and oppression was pending at the time of the Baileys['] death?
 "V. Whether the award of attorney's fees based on the tort claim of squeeze-out and oppression was improper?
 "VI. Whether the trial court properly allocated and awarded damages to the plaintiffs per [Robbins I]?
 "VII. Whether certain of the plaintiff's [sic] claims were barred by the applicable statute(s) of limitations?"
(Robbins's brief, p. 11.)
 A.
We first address Robbins's issue V: "Whether the award of attorney's fees based on the tort claim of squeeze-out and oppression was improper?"
In arguing this proposition, Robbins properly states that "[t]he trial Court's September 3, 2004, Order continues to award plaintiffs' attorney fees" in the same amount as did the January 24, 2003, order from which the appeal in Robbins I was taken. In its later order the trial court did not revisit the award of attorney fees, thus leaving the attorney-fee award unchanged by virtue of the concluding sentence of the order: "All other provisions of the Order entered by this Court on January 24, 2003,[2] shall remain unaltered and in full force and effect."
The challenge Robbins now asserts to the attorney-fee award could just as well have been presented in Robbins I; the error he claims attends the attorney-fee award was then fully ripe for review and could have been addressed by this Court. Robbins did not raise it in any way on that occasion;[3] consequently the issue is deemed to have been waived.[4] Hitt v. StatePers. Bd., 873 So.2d 1080 (Ala. 2003); Ex parte Handley,494 So.2d 24 (Ala. 1986); and Ex parte Army Aviation Ctr. Fed.Credit Union, 477 So.2d 379 (Ala. 1985).
 B.
We next address Robbins's issues II and IV: "Whether the plaintiffs' claims were barred by Section 6-5-462, [Ala. Code 1975,] in that certain claims asserted by the plaintiffs did not survive the deaths of the plaintiffs?" and "Whether the plaintiff estates can recover for the tort of squeeze-out and oppression since no claim for squeeze-out and oppression was pending at the time of the Baileys['] death?" *Page 783 
In arguing issue II Robbins references the fact that "any claim of squeeze-out and oppression asserted on behalf of the Baileys was extinguished at the time of their deaths," citing RobbinsI, and asserts that, despite the trial court's explicit declarations to the contrary, "[c]learly the trial court is here making an award for a tort damage sustained by the Baileys before their demise." (Robbins's brief, pp. 30-31.) As noted, the trial court made the specific determination in its September 3, 2004, order that the minority-shareholder estates had not requested, and the court had not ordered, any damages that accrued before the deaths of Mr. and Mrs. Bailey. In its order of November 12, 2004, denying Robbins's post-judgment motions, the court reiterated that, "[a]s this Court has found that there were notort damages requested by the minority shareholders, orordered by this Court to the minority shareholders that arose prior to the decedents' death, no damages were awarded inappropriately. Likewise, no tort damages belonging to the Baileys prior to their demise were the basis for any awards to the Corporation." (Emphasis in original.) As also earlier noted, in Robbins I we instructed the trial court on remand "to determine the extent, if any, to which any damages awarded to the corporation or to the estates in its order of January 27, 2003, arose from tort injuries sustained by the individual decedents before their respective deaths and are, therefore, not recoverable in this action." 890 So.2d at 1012 (emphasis supplied). Obviously, we recognized that the trial judge might determine that none of the damages awarded to the corporation or to the estates arose from tort injuries sustained by the Baileys before their deaths. We remanded the case for the trial court "to clarify its order and, if necessary, to correct the amount of damages awarded." 890 So.2d at 1014. In response to that instruction, the trial court has declared that none of the damages it had awarded related to injuries sustained by the Baileys individually during their lifetimes, and Robbins now simply argues that because the tort claims asserted in the complaint referred to conduct by Robbins beginning in 1991, "there is only one conclusion that can be drawn from the language of the plaintiff's second amended complaint and the trial Court's order: facts and injuries that occurred between 1991 and September 11, 1997, were taken into account when the trial court awarded various tort damages in its January 24, 2003, September 3, 2004, and November 4, 2004, Orders." (Robbins's brief, pp. 33-34.) This ad hoc argument is simply insufficient to discredit the trial court's unequivocal statements to the contrary.
In essence, Robbins does not actually argue a survivability issue in connection with issue II, that issue having been resolved in Robbins I; he simply argues that the trial court must have included within its award damages that had accrued to the Baileys during their lifetimes but that were extinguished by their deaths.
In connection with issue IV, Robbins likewise simply argues that because the trial court has now again determined that Robbins received excessive compensation from Corridor Enterprises in the amount of $258,768.57, as determined by the trial court's January 27, 2003, order but has determined that only $66,477.50 of that amount occurred after the estates became shareholders, the continuation of an award in the same total amount, even though $235,036.10 of the award is now allocated to the corporation, shows that "[c]learly the trial Court is here making an award for a tort damage sustained by the Baileys before their demise." Alternatively, Robbins argues that "the trial Court's current Orders are drafted in such a poor form that making a determination whether any *Page 784 
other awards included tort damages sustained by the Baileys before the deaths is impossible." (Robbins's brief, p. 42.) These generalized arguments again fail to demonstrate error in the face of the trial court's explicit declarations to the contrary.
 C.
We next address Robbins's issue VII: "Whether certain of the plaintiff's [sic] claims were barred by the applicable statute(s) of limitations?"
In Robbins I, Robbins asserted as one of his issues that "[t]he plaintiffs' tort and equitable claims are barred by the applicable two-year statute of limitations." (890 So.2d at 1008.) He now argues that "[t]hose claims that are either tort or equitable claims are barred by the applicable statute of limitations." (Robbins's brief, p. 47.) He also argues that the Baileys had sufficient knowledge more than two years before the filing of the action by their estates of certain acts allegedly committed by Robbins so as to cause their tort claims to accrue during their lifetime and to start the running of the statutory limitations period. Our discussion and determination of these issues in Robbins I foreclose their attempted resurrection by Robbins on this appeal, because of the bar created by the doctrine of the law of the case. See Lyons v. Walker Reg'l Med.Ctr., 868 So.2d 1071, 1077 (Ala. 2003).
 D.
We next address Robbins's issues I and VI: "Whether the trial court improperly awarded damages to the minority shareholders for derivative claims?" and "Whether the trial court properly allocated and awarded damages to the plaintiffs per [RobbinsI]?"
The central theme of Robbins's arguments in support of these issues is that the same conduct cannot serve as the basis for a derivative action, which asserts harm only as to the corporation, and also the basis for the tort claims of squeeze-out and oppression, which harm only the minority stockholders. (Robbins's brief, p. 22.) We agree with Robbins that we so held in RobbinsI and that was why we determined that "[b]ecause each award of damages was made jointly to the corporation and to the minority shareholders, the manner in which the trial court structured its damages award [was] improper." 890 So.2d at 1014. As noted, we remanded for clarification, instructing the trial court to "consider whether an award should be made to the estates and Corridor Enterprises separately, or, alternatively, whether only the language of the order need be altered." Id.
We now consider Robbins's arguments, directed to the various claims and associated damages awards set out in the trial court's order of September 3, 2004:
 1. Excessive Compensation
The trial court awarded a total of $258,768.57 "for Robbins's fraudulent taking of excessive salaries or compensation" over an extended period of time, both before and after the Baileys' deaths. The court determined that the amount of excessive compensation Robbins received after September 1997 totaled $66,477.50 and of that amount awarded the minority-shareholder estates 35.7 percent, representing their percentage of stock ownership, for a total of $23,732.47. The remaining damages for excessive compensation, totaling $235,036.10, were awarded to Corridor Enterprises based on its derivative claim.
Robbins asserts that in their complaint the plaintiffs characterized their claim of excessive compensation "as a breach of fiduciary duty tort claim," but he goes on *Page 785 
to state only that the $66,477.50 identified as damages occurring after the estates became the minority stockholders "is more in line with this Court's Opinion and may be due to be further reduced if awarded at all." (Robbins's brief, pp. 28-29.) Robbins does not otherwise discuss whether he could have obtained some of the compensation that was determined to have been excessive in a manner that might support recovery for minority stockholder squeeze-out or oppression, and he does not challenge the plaintiffs' characterization of the claim as a tort claim as opposed to a derivative claim.
Robbins does not demonstrate that the excessive-compensation damages, awarded for fraudulent misconduct by Robbins extending over a number of years and involving various separate fraudulent actions and suppressions, represents "the same conduct." It is the obligation of an appellant adequately to identify and to argue the nature of any asserted error, citing in the process relevant supporting legal authority. University of South Alabamav. Progressive Ins. Co., 904 So.2d 1242 (Ala. 2004); BeachcroftProps., LLP v. City of Alabaster, 901 So.2d 703 (Ala. 2004).
In this particular instance, Robbins has failed to identify reversible error affecting the trial court's award of excessive-compensation damages for both a tort claim and a derivative claim. In Robbins I, we noted that a classic illustration of squeeze-out/oppression would be that the majority stockholder(s) could drain off the corporation's earnings by paying exorbitant salaries and bonuses to the majority shareholder officers. 890 So.2d at 1015. Assuming that payment of excessive salaries or compensation would give rise to a claim of minority shareholder squeeze-out or oppression, Robbins does not demonstrate reversible error in the allocation of the bulk of the award of damages for excessive compensation to the corporation. "The party alleging error must not only establish error, but must also show that he was probably prejudiced by the error." Johnsonv. Langley, 495 So.2d 1061, 1065 (Ala. 1986).
 "No error . . . in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
Rule 61, Ala. R. Civ. P.
 "No judgment may be reversed or set aside, nor any new trial granted in any civil or criminal case . . . for error as to any matter or pleading or procedure, unless in the opinion of the court to which the appeal is taken . . . after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
Rule 45, Ala. R.App. P. "Before reversal of the judgment may be had it must appear to the court that the error complained of has probably `injuriously affected the substantial rights of the parties.'" Lakey v. State, 258 Ala. 116, 121-22, 61 So.2d 117,122 (1952).
Robbins, as the owner of 64.3 percent of the stock of Corridor Enterprises, will be entitled to share, to the extent of his ownership interest, in the damages awarded Corridor Enterprises. Accordingly, he cannot show that any error associated with allocating damages to the corporation will probably injuriously affect his *Page 786 
substantial rights; were those same damages to be awarded entirely to the minority-shareholder estates, he would not enjoy a similar right of participation. It is to be noted that Robbins does not contend that an award of $258,768.57 for excessive compensation is unsupported by the evidence or otherwise unwarranted, apart from his contention that the amount necessarily and improperly includes an award for tort damages for harm sustained by the Baileys before their deaths.
 2. Conversion
In its September 3, 2004, order, the trial court awarded damages "for conversion of monies loaned to Corridor Enterprises in September 1998 in the amount of $119,005," thus establishing that the damages awarded on the conversion claim did not relate to any tortious wrong done the Baileys during their lifetimes. The trial court identified these damages as being "due to the corporation on its derivative claims." Nonetheless, the trial court concluded that "[t]his total amount [i.e., $119,005] can be allocated between the corporation and the minority shareholders based on the percentage of the corporation owned by the minority shareholders," with the result that "[t]he minority shareholders are awarded 35.7% or $42,484.70 for their specific claims of oppression and squeeze-out. The remaining amount — $76,520.30 — is awarded to Corridor Enterprises based on its derivative claims against Robbins while acting in his fiduciary capacity for the corporation."
Thus, the court split the damages awarded on the derivative claim of conversion purely on the basis of the percentage of shares in the corporation owned by the estates and those owned by Robbins, although the damages were being awarded for the same conduct. This is contrary to our mandate on remand in RobbinsI, that the trial court conduct "further proceedings consistent with this opinion," 890 So.2d at 1016, which opinion included our conclusions that "an award of damages directly to the minority shareholders on a shareholder-derivative claim is improper" and that "the individual shareholders may not share in the corporation's recovery on the shareholder-derivative claims."890 So.2d at 1014. Accordingly, we are obliged to reverse this portion of the trial court's September 3, 2004, order but, given that there is no challenge as to the amount of the award and that the trial court acknowledges that the entire amount is due Corridor Enterprises as a recovery on the shareholder-derivative conversion claim, we need not again remand for a revision of this component of the total compensatory-damages award. Rather, we simply declare that the entire amount of $119,005 is awarded to Corridor Enterprises.
 3. Tax Penalties
The trial court awarded damages in the amount of $111,180 for "penalties [which had] accrued as a result of Robbins's failure to file corporate tax returns for capital gains that originated in 2001." The best we can tell from the record, the tax penalties are solely the legal liability of Corridor Enterprises, and the minority-shareholder estates have no exposure with respect to those penalties. The ultimate payment of those tax penalties will reduce the assets of the corporation; therefore, indirectly, that loss will ultimately be visited upon all of the shareholders, including the minority-shareholders estates, but, as we explained in James v. James, 768 So.2d 356, 358 (Ala. 2000), a case we discussed in Robbins I, 890 So.2d at 1014:
 "[I]t has also been held that when a plaintiff's status as a shareholder is essential to his claims for damages, including damages based on claims of suppression and oppression, the claims are *Page 787 
derivative claims and must be brought on behalf of the corporation. Therefore, `a minority shareholder cannot parlay a wrong committed primarily against the corporation, which gives rise to a derivative claim only, into a personal recovery of damages under a squeeze-out theory by simply stating that the injury to the corporation is also "unfair" to him as well.' Stallworth [v. AmSouth Bank of Alabama], 709 So.2d [458] at 467 [(Ala. 1997)]."
In its order of September 3, 2004, the trial court concluded that Robbins's breach of fiduciary duty by failing to file the corporate tax returns in question "resulted in lost revenue directly to the minority shareholders as well as the corporation. This total amount can be allocated between the corporation and the minority shareholders based on the percentage of the corporation owned by the minority shareholders." Accordingly, the court allocated 35.7% of the award, $39,691.26, to the estates "for their specific claims of oppression and squeeze-out." Given our analysis and mandate in Robbins I, we cannot countenance this splitting of what is manifestly a shareholder-derivative claim into a combined-but-dissected derivative claim and a claim for oppression and squeeze-out. Therefore, we again order allocated to Corridor Enterprises the entire amount of the award as damages for the tax penalties it incurred as a result of Robbins's breach of fiduciary duty.
We are not unmindful of the fact that in James, supra, we approved an award by the trial court which placed a portion of the derivative-claim damages equal to the percentage of stock ownership of the minority shareholder in trust for the minority shareholder. 768 So.2d at 359. The justification for that approach in James was that, because shareholder-derivative claims are equitable in nature (see also Robbins I,890 So.2d at 1013 n. 15) and "by the time the court entered its judgment [the corporation] had already been liquidated and [the minority shareholder] had already received value for his 41.5% interest,"768 So.2d at 359, it would not be equitable to give the damages to the already liquidated corporate entity.
 "In order to fashion an equitable remedy, the damages would need to be passed through [the corporation] directly to the shareholder. . . . In an equity proceeding, such as the present one, the judgment can be molded `so as to adjust the equities of all parties and to meet the obvious necessities of each situation.'"
768 So.2d at 359.
In the present case the trial court has ordered Corridor Enterprises dissolved and has appointed a receiver to assist in that effort. Robbins I, 890 So.2d at 1008. As of the date of the compilation of the record in this present appeal and according to the parties' briefs, the receiver has marshaled the assets of the corporation and is presently holding land-sale proceeds in excess of $900,000 and title to other land owned by the corporation for which a sale in the amount of $696,420 is pending. (Robbins's reply brief, p. 20; Sanders's brief, p. 38.) Accordingly, whatever moneys Corridor Enterprises may succeed in collecting from Robbins on its derivative-claim awards will simply join those moneys as assets currently being held by the receiver of the corporation and thus be available for ultimate distribution. Further, we are mindful of the fact that in its January 27, 2003, order the court ordered that the land-sale proceeds then being held by the receiver "be retained and applied toward the payment of this judgment or used for payment of reasonable expenses incurred in connection with the liquidation of the remaining assets of the corporation." *Page 788 
 4. Loss of Rental Income; Diversion of Corporate Opportunities.
The only individualized treatment Robbins accords these claims in his brief is this statement in his principal brief: "The plaintiffs' claims of loss of rental income and diversion of corporate opportunities are also tort claims filed by the plaintiffs' [sic] in this case. Therefore, under this Court's Opinion the plaintiffs should only recover for injuries sustained after September 11, 1997." (Robbins's brief, p. 29.) Robbins does not otherwise challenge any feature of these claims or the compensatory damages awarded in connection with them and, as noted, the trial court has declared emphatically that the amounts awarded do not include any damages sustained before September 11, 1997. Because, as explained previously, Robbins suffers no prejudice with respect to any allocation to Corridor Enterprises of a portion of tort-claim damages that should go entirely to the minority-shareholder estates, he fails to demonstrate reversible error in connection with the trial court's division of the damages awarded for these two claims between the minority-shareholder estates and the corporation.
 5. Corporate Waste
Correctly recognizing that a claim of corporate waste is a derivative claim under Alabama law (see Galbreath v. Scott,433 So.2d 454, 457 (Ala. 1983)), the trial court allocated solely to Corridor Enterprises the entire award for this wrong in the amount of $1,830,400. We do not discern in Robbins's briefs any challenge to this component of the trial court's award.
With respect to this award, however, and the award for excessive compensation, Robbins also argues that the trial court's order whereby, according to Robbins, the minority-shareholder estates "recover 35.7% of each award directly and will then receive an additional 35.7% of the remainder in the course of the dissolution of the corporation" allows "a double recovery." (Robbins's brief, p. 46.) Robbins cites no caselaw in that regard and does not otherwise elaborate upon the contention, except to state that a double recovery for the minority-shareholder estates would be the result under our holding in Robbins I. As explained above, we have transferred from the minority-shareholder estates to the corporation all of the damages allocated by the trial court to the minority-shareholder estates resulting from the claims of conversion and the payment of tax penalties, and we have explained why, given that Robbins chooses to characterize the claims of excessive compensation, loss of rental income, and diversion of corporate opportunities as tort claims accruing to the minority-shareholder estates, any error in the allocation of a portion of those damages to the corporation would be error without injury as far as Robbins is concerned. Finally, the damages awarded by the trial court for the remaining claim of corporate waste are assigned exclusively to the corporation. Thus, there remains no field of operation for Robbins "double recovery" assertion, even if the assertion would otherwise have merit.
 E.
We next address Robbins's issue III: "Whether there was substantial evidence presented at the trial that would authorize the award of punitive damages to the plaintiffs and whether the amount of punitive damages awarded was excessive?"
The trial court's September 3, 2004, order awards the minority-shareholder estates a total of $750,000 as punitive damages "to punish Robbins for his egregious, willful, wanton, and reckless behavior." The trial court expressly found that Robbins's behavior "was specifically aimed at *Page 789 
oppressing and squeezing-out the minority-shareholders."
Although Robbins phrases this issue so as to contest both the evidentiary sufficiency for an award of punitive damages and the amount of punitive damages awarded, nowhere in his briefs does he offer any argument in support of the proposition that there was not substantial evidence authorizing an award of punitive damages. Moreover, in Robbins I, he raised no question concerning this sufficiency of the evidence to warrant punitive damages, arguing only that punitive damages of $750,000 were excessive. Therefore, as previously explained, Robbins has waived any challenge to the sufficiency of the evidence to support an award of punitive damages. Finally, the facts recited in RobbinsI are clearly sufficient to support an award of punitive damages.
Turning to Robbins's contention that the amount of punitive damages is excessive, we are mindful of our duty to conduct a de novo review in assessing a trial court's punitive-damages award to determine whether the punitive damages are unconstitutionally excessive. National Ins. Ass'n v. Sockwell, 829 So.2d 111 (Ala. 2002). In conducting our de novo review, we consider the "guideposts" established in BMW of North America, Inc. v. Gore,517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and the factors set out in Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).
In arguing that the punitive damages are excessive, Robbins argues that any award of punitive damages, regardless of amount, would be excessive given that, considering the amount of compensatory damages assessed against him, he is left with a large negative net worth. We have upheld compensatory damages against Robbins in the amount of $3,269,125.91. Of that amount, $3,056,557.73 is now allocated to the corporation, and Robbins, as a shareholder of 64.3% of the stock of Corridor Enterprises, potentially could receive that percentage of the corporation's net assets after all debts and expenses upon dissolution and distribution.
The parties argue different analyses of the documentary and testimonial evidence adduced during the nonjury trial that began on July 29, 2002, and during the March 31, 2003, hearing on Robbins's motion for a new trial, but, even accepting the maximum asset valuations contended for by the plaintiffs, and the minimum valuations they assert for Robbins's liabilities, it is clear that the compensatory damages assessed against Robbins dwarf the most generous calculation of his assets. In that regard, we do not disregard that the receiver for Corridor Enterprises holds some $900,000 for ultimate distribution, subject to decrease by additional expenses and that there is the potential for a sale of acreage still held by the corporation for some $696,000. Even assuming a "best case scenario" whereby Robbins might ultimately receive 64.3 percent of those sums, that would net him only slightly more than $1,000,000, out of which he must pay the $212,568.18 allotted to the estates for compensatory damages. Robbins must pay $3,056,557.73 to the corporation by virtue of the derivative-shareholder claim damages. Even assuming some arrangement whereby he would only have to pay the sum of $1,091,191 to the corporation, representing the minority-shareholder estates' 35.7 percent of $3,056,557.73, there is no plausible analysis of the evidence under which he would be anything less than some $200,000 short of that amount, even after having received maximum corporate distributions under the most optimistic scenario projected by the plaintiffs. Under any reasonable analysis, Robbins's assets, other *Page 790 
than the value of his holdings in Corridor Enterprises, do not exceed $100,000. Combined with the maximum distribution he might ultimately receive in the dissolution of Corridor Enterprises, his assets will be overwhelmed by the compensatory damages he is obligated to pay in this case, and he was unemployed as of the March 31, 2003, hearing. Even if all of Robbins's testimony concerning his assets is disregarded as unworthy of belief, as the trial judge was entitled to do, and the plaintiffs' evidence and assumptions relating to Robbins's assets accepted, Robbins simply does not have assets to pay the compensatory damages, much less any of the punitive damages.
In Central Alabama Electric Cooperative v. Tapley,546 So.2d 371, 377 (Ala. 1989), we stated: "In the rarest cases, involving the most egregious conduct, juries should be entitled to punish defendants so severely as to destroy them; justice demands that. But in the typical punitive damages case, the award should punish without destroying. That, in a nutshell, is the way punitive damages and the civil justice system coexist." (Footnote omitted.) Tapley, however, antedates the more definitive pronouncements by the United States Supreme Court concerning considerations that must attend an assessment of the possible excessiveness of punitive damages, beginning with BMW of NorthAmerica, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589,134 L.Ed.2d 809 (1996). Additionally, this Court, developing its own jurisprudence and attempting to understand and apply the United States Supreme Court's more recent opinions on point, has spoken more definitively on the subject. As the trial court accurately noted in Sheffield v. Andrews, 679 So.2d 1052, 1055 (Ala. 1996), "`[r]elatively few Alabama cases have considered the reduction of punitive damages against an individual defendant. Most of the reported decisions focus on the financial position of a corporate defendant.'" In BMW of North America, Inc. v. Gore,701 So.2d 507 (Ala. 1997), on remand from the United States Supreme Court, we "suggested" that following our remand the trial court "might consider whether a punitive damages award that exceeds 10% of the defendant's net worth crosses the line from punishment to destruction, particularly where the defendant's conduct is not highly reprehensible." 701 So.2d at 514. InHillcrest Center, Inc. v. Rone, 711 So.2d 901 (Ala. 1997), we ordered further reduction of a punitive-damages award that represented approximately 60% of the combined net worth of the individual defendant and the corporate defendants. "While not reaching an amount that would destroy the defendants, the punitive damages award does, under these circumstances, exceed what is necessary to `punish.'" 711 So.2d at 909. In Patel v.Patel, 708 So.2d 159 (Ala. 1998), we affirmed a punitive-damages award that constituted approximately 7.5% of the individual defendant's net worth, being of the opinion that "payment of this award will certainly sting, but . . . it will not cripple the defendant financially." 708 So.2d at 163.
In Williams v. Williams, 786 So.2d 477 (Ala. 2000), this Court upheld a $200,000 compensatory-damages award against the athletic director of Alabama State University ("ASU") in an action against him by an individual whom the defendant had persuaded to leave the position of head basketball coach at a Georgia university to serve as head basketball coach at ASU, by fraudulently representing that the individual was guaranteed more than a one-year term as head basketball coach. This misrepresentation was made despite the athletic director's knowledge that the individual was not guaranteed more than a one-year *Page 791 
term and despite instructions to the athletic director by the president of ASU to retract the portion of the job offer dealing with employment in excess of a year. We concluded that the evidence supported the jury's apparent finding of promissory fraud. 786 So.2d at 480. The athletic director was shown to have a net worth of $59,903 so that "[s]ubtraction of the $200,000 compensatory-damages award would bring his net worth to a negative $140,000." 786 So.2d at 483. Despite finding substantial evidence of reprehensibility on the part of the defendant, this Court concluded that "[b]y showing that he will have a negative
net worth of $140,000 after paying the compensatory-damages award we are affirming, the defendant athletic director has shown that any award of punitive damages would be excessive."786 So.2d at 483 (emphasis in original). Consequently, we ordered "a remittitur of all punitive damages; otherwise, the judgment will be reversed and the case remanded for a new trial."786 So.2d at 485.
More recently, in Orkin Exterminating Co. v. Jeter,832 So.2d 25 (Ala. 2001), we held that a punitive-damages award of approximately 10% of the corporate defendant's net worth, "from misconduct during a single transaction not involving loss of life or limb," 832 So.2d at 42, weighed in favor of finding the award excessive.
As recounted in Robbins I, Robbins's wrongful conduct was extremely reprehensible and extended over a long period. Even though his wrongful conduct directed toward the Baileys during their lifetimes cannot be directly considered in assessing the reprehensibility of his conduct toward their subsequently established estates, that earlier conduct is relevant in demonstrating an unbroken pattern of intentional wrongful conduct. We recognize that the United States Supreme Court has stated that the degree of reprehensibility is "the most important indicium of the reasonableness of a punitive damages award" and that it was important in that regard whether the harm resulted from intentional malice, trickery, or deceit, as opposed to mere accident. Gore, 517 U.S. at 575, 116 S.Ct. 1589; State FarmMutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419,123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).
Although, as noted, we expressed the opinion in Tapley that "[i]n the rarest cases involving the most egregious conduct, juries should be entitled to punish defendants so severely as to destroy them," 546 So.2d at 377, we have never approved the application of that concept in an actual case and, in Williams, supra, despite the existence of reprehensible conduct, we concluded that a negative net worth resulting from the size of the compensatory-damages award necessitated the remittitur of all punitive damages. Payment in full of the compensatory damages in this case will destroy Robbins financially and, as we stated inWilliams, 786 So.2d at 482, quoting Green Oil Co. v. Hornsby,539 So.2d at 222, punitive damages "must not exceed an amount that would accomplish society's goals of punishment and deterrence."
Accordingly, as we did in Williams, we hold that because Robbins has shown that he will have a large negative net worth after payment of a substantial, but nonetheless incomplete, portion of the compensatory damages, he has shown that any award of punitive damages is excessive, and we are obliged to order a remittitur of all punitive damages; otherwise, the judgment will be reversed and the case remanded for a new trial.
 Conclusion
We affirm the trial court's judgment insofar as it awards attorney fees and awards compensatory damages based on excessive compensation, loss of rental income, *Page 792 
diversion of corporate opportunities, and corporate waste. We reverse the judgment insofar as it awards damages for conversion and for the tax penalties incurred as a result of Robbins's actions to the minority-shareholder estates, and we direct the trial court on remand to assign all of the damages awarded for conversion and tax penalties to Corridor Enterprises. Our affirmance is conditioned on the minority-shareholder estates filing with this Court, within 21 days of this opinion, a remittitur of all punitive damages. Otherwise, the judgment on the punitive-damages award will be reversed and the case remanded for a new trial on that issue. We remand this cause to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; AFFIRMED CONDITIONALLY IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.*
NABERS, C.J., and SEE, LYONS, and STUART, JJ., concur.
BOLIN, J., recuses himself.
[1] James Bailey died on February 9, 1997, at the age of 91, and Mary Bailey died on April 29, 1997, at the age of 85; administrators were appointed for their estates on September 27, 1997, and September 11, 1997, respectively. Robbins I,890 So.2d at 1003.
[2] The order was signed and endorsed "filed in open court" by the trial judge on January 24, 2003; it was stamped "filed in office" of the circuit clerk on January 27, 2003. The trial judge uses the first date in his later references to the order whereas this Court, as noted, identified the order in Robbins I by reference to the later date.
[3] See 890 So.2d at 1008 for the list of issues Robbins raised in Robbins I.
[4] This Court has granted Robbins's motion requesting that the record on appeal, including the briefs of the parties, filed inRobbins I be incorporated in this appeal as a part of the record. Accordingly, we have available to us, and have reviewed where referenced by the parties or where otherwise appropriate, the record and appellate briefs filed in Robbins I.
* Note from the reporter of decisions: On February 16, 2006, the Supreme Court Clerk's Office issued a certificate of judgment, amending its previous certificate of judgment in this case issued on November 8, 2005, and stating, in part:
 ". . . WHEREAS the appellees filed notice on October 27, 2005, of their acceptance of remittitur:
"IT IS ORDERED that the judgment entered will be:
 "Affirmed in Part; Reversed in Part; and Remanded with Directions."