MOORE, Judge,
dissenting.
Although I agree that the actions of Paul Averette, Jr., Victoria Louise Tanner, and Demented Needle, LLC (“the defendants”), were reprehensible and warrant punitive damages, I also conclude that the amount of the punitive damages awarded far exceeds any actual damage caused to Chassity Greech Ebbole and that those awards will financially devastate the defendants, a result not intended by punitive-damages awards. I, therefore, dissent.
First, I acknowledge that the law presumes damages in case of defamation per se. However, in this case, the jury originally assessed $0 in compensatory damages and, only upon reassessment, awarded Ebbole $1 in compensatory damages as to each defendant in order to sustain its punitive-damages awards. The jury obviously determined that Ebbole did not suffer, or at least that she did not prove that she had suffered, any actual monetary damage as a result of the defamatory statements made by the defendants. Consequently, the award of punitive damages — $200,000 against Demented Needle, $100,000 against Averette, and $10,000 against Tanner — is far out of proportion to “ ‘ “the harm that actually has occurred.” ’ ” BMW of North America, Inc. v. Gore, 517 U.S. 559, 581, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (quoting TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 460, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), quoting in turn Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)). Nevertheless, I agree with the reasoning of the main opinion that the mere lack of proportionality between the actual harm committed and the punitive damages awarded does not necessarily require a remittitur in defamation cases because of their unique nature.
I do believe, however, that the punitive damages in this case should be remitted. In addition to the lack of any actual damage suffered by Ebbole, the record reflects that the punitive-damages awards would financially devastate the defendants.
*883 As noted by the main opinion, in support of their motions seeking a remittitur, the defendants submitted evidence in the form of affidavits setting out their net worths. 88 So.Bd at 869. Averette’s affidavit stated that his personal net worth was $12,247.23, and Tanner’s affidavit stated that she had total assets of $7,500 and total liabilities of $10,900, for a net worth of “minus $3,400.” Averette also testified that Demented Needle’s net worth was “minus $28,745.28.” Ebbole did not contest those figures in any manner or present any evidence to call into question the veracity of the statements upon which they were based. The record contains no evidence indicating that the figures are implausible, and the circumstances suggest they are entirely probable. The testimony establishing the net worths of the defendants was contained in affidavits and could not have been deemed unreliable or untrustworthy based on the demeanor of the witnesses.
I agree with the main opinion that a trial court does not have to accept testimony simply because it is not contradicted. As the authorities cited by the main opinion state, a trial court, as a fact-finder, may lawfully disregard uncontradicted testimony when it has a valid lawful or factual reason for doing so. In this case, the trial court disregarded those affidavits because
“these defendants have not provided this Court with credible evidence upon which to fully judge their respective financial conditions. The financial evidence submitted by Averette and Tanner [is] unsupported by documentation such as tax returns, audited financial statements, or the like.”
In Rety v. Green, 546 So.2d 410, 421 (Fla.Dist.Ct.App.1989), upon which the main opinion relies, 88 So.3d at 879, the court stated:
“The defendant Green, whom the jury found was unworthy of belief in this affair, testified concerning his alleged indebtedness and that his corporation was bankrupt; he proffered, however, no CPA audit, no income tax returns, nor any other records or documentary proof to corroborate this testimony. Plainly, the jury ivas not required to accept Green’s self-serving cries of poverty, especially when other evidence from a former employee of Green’s showed that the corporate defendant’s gross sales in 1984- were from $60-$70 million....”
546 So.2d at 421 (emphasis added). Rety stands only for the proposition that self-serving testimony of the defendant as to his or her net worth can be properly disregarded by a fact-finder when that testimony contradicts other evidence or can be considered implausible in light of the available evidence. Rety does not stand for the proposition that uncontradicted testimony as to net worth may be disregarded merely due to the failure of an affiant to attach financial documents confirming his or her testimony.
When an affiant testifies as to his or her personal knowledge of facts, Alabama law generally does not require that witness to attach documents that further prove the same information in order for the affidavit testimony to be given probative value. See Johnson v. Layton, 72 So.3d 1195 (Ala.2011) (holding that physician testifying as to personal knowledge of medical treatment was not required to attach medical chart to affidavit in order to verify the affidavit testimony). Obviously, the probative value of that testimony diminishes, and may even disappear, if it is contrary to other evidence, internally inconsistent, or implausible in light of common experience or the circumstances of the case; however, nothing in the record undermines in any *884 manner the credibility of the defendants’ statements as to their net worths.
The main opinion nevertheless holds that the trial court could have properly disregarded the affidavits because they contained self-serving statements from interested parties. 88 So.3d at 879. Putting aside the fact that the trial court did not rely upon that ground in finding the affidavit testimony incredible, I cannot agree with the main opinion’s post hoc reasoning that a trial court should be empowered to simply disregard testimony from a defendant as to his or her net worth solely because that evidence advances the defendant’s interest in having a punitive-damages award remitted. If that was the case, a fact-finder in every instance could disregard any positive testimony given by a party, who is always self-interested, even if that testimony is not challenged in any way and appears consistent with all the other evidence. No fact could ever be established by the testimony of a party, which concept the law long abandoned. See Schoenvogel ex rel. Schoenvogel v. Venator Group Retail, Inc., 895 So.2d 225, 238 (Ala.2004) (citing Herbert E. Tucker, Colorado Dead Man’s Statute: Time for Repeal or Reform?, 29 Colo. Law. 45, 45 (January 2000) (tracing the movement away from the common-law rule that rendered parties incompetent to testify in their own cases)). When the record contains no legitimate reason for questioning the credibility of a party’s statements, a decision to disregard those statements based solely on the fact that they assist the party in proving his or her case is necessarily arbitrary and contrary to the law. See generally Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 35 L.Ed. 501 (1891) (holding that a finder of fact may not arbitrarily disregard uncontra-dicted evidence).
The record lacks any basis on which the trial court could have discerned that the defendants’ net worths were different than as stated in those affidavits. Thus, the information provided in the affidavits was the only evidence before the trial court relevant to the defendants’ net worths and pertinent to the trial court’s inquiry into the impact of the punitive-damages awards on them. As a result, this case is distinguishable from Robbins v. Sanders, 927 So.2d 777 (Ala.2005), on which the main opinion relies. 88 So.3d at 877. In Robbins, it is clear that the evidence was disputed as to Robbins’s assets and his net worth. See 927 So.2d at 789 (“The parties argue different analyses of the documentary and testimonial evidence ..., but, even accepting the maximum asset valuations contended for by the plaintiffs, and the minimum valuations they assert for Robbins’s liabilities, it is clear that the compensatory damages assessed against Robbins dwarf the most generous calculation of his assets.”); see also 927 So.2d at 790 (“Even if all of Robbins’s testimony concerning his assets is disregarded ... and the plaintiffs’ evidence and assumptions relating to Robbins’s assets accepted, Robbins simply does not have assets to pay the compensatory damages, much less the punitive damages.”).
Accepting Averette’s net worth as $12,247.23, Tanner’s net worth as “minus $3,400,” and Demented Needle’s net worth as “minus $28,745.28,”[6]1 conclude that the punitive-damages awards of $100,000 against Averette, $10,000 against Tanner, *885 and $200,000 against Demented Needle should be remitted. In Robbins, supra, our supreme court addressed Robbins’s argument that any award of punitive damages against him would be excessive because such an award would financially devastate him. The supreme court stated:
“In Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371, 877 (Ala. 1989), we stated: ‘In the rarest cases, involving the most egregious conduct, juries should be entitled to punish defendants so severely as to destroy them; justice demands that. But in the typical punitive damages case, the award should punish without destroying. That, in a nutshell, is the way punitive damages and the civil justice system coexist.’ (Footnote omitted.) Tapley, however, antedates the more definitive pronouncements by the United States Supreme Court concerning considerations that must attend an assessment of the possible excessiveness of punitive damages, beginning with BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Additionally, this Court, developing its own jurisprudence and attempting to understand and apply the United States Supreme Court’s more recent opinions on point, has spoken more definitively on the subject. As the trial court accurately noted in Sheffield, v. Andrews, 679 So.2d 1052, 1055 (Ala.1996), ‘ “Relatively few Alabama cases have considered the reduction of punitive damages against an individual defendant. Most of the reported decisions focus on the financial position of a corporate defendant.” ’ In BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997), on remand from the United States Supreme Court, we ‘suggested’ that following our remand the trial court ‘might consider whether a punitive damages award that exceeds 10% of the defendant’s net worth crosses the line from punishment to destruction, particularly where the defendant’s conduct is not highly reprehensible.’ 701 So.2d at 514. In Hillcrest Center, Inc. v. Rone, 711 So.2d 901 (Ala.1997), we ordered further reduction of a punitive-damages award that represented approximately 60% of the combined net worth of the individual defendant and the corporate defendants. ‘While not reaching an amount that would destroy the defendants, the punitive damages award does, under these circumstances, exceed what is necessary to “punish.”’ 711 So.2d at 909. In Patel v. Patel, 708 So.2d 159 (Ala.1998), we affirmed a punitive-damages award that constituted approximately 7.5% of the individual defendant’s net worth, being of the opinion that ‘payment of this award will certainly sting, but ... it will not cripple the defendant financially.’ 708 So.2d at 163.
“In Williams v. Williams, 786 So.2d 477 (Ala.2000), this Court upheld a $200,000 compensatory-damages award against the athletic director of Alabama State University (‘ASU’) in an action against him by an individual whom the defendant had persuaded to leave the position of head basketball coach at a Georgia university to serve as head basketball coach at ASU, by fraudulently representing that the individual was guaranteed more than a one-year term as head basketball coach. This misrepresentation was made despite the athletic director’s knowledge that the individual was not guaranteed more than a one-year term and despite instructions to the athletic director by the president of ASU to retract the portion of the job offer dealing with employment in excess of a year. We concluded that the evidence supported the jury’s apparent finding of promissory fraud. 786 So.2d at 480. The athletic director was shown *886 to have a net worth of $59,903 so that ‘[s]ubtraction of the $200,000 compensatory-damages award would bring his net worth to a negative $140,000.’ 786 So.2d at 483. Despite finding substantial evidence of reprehensibility on the part of the defendant, this Court concluded that ‘[b]y showing that he will have a negative net worth of $140,000 after paying the compensatory-damages award we are affirming, the defendant athletic director has shown that any award of punitive damages would be excessive.’ 786 So.2d at 483 (emphasis in original). Consequently, we ordered ‘a remittitur of all punitive damages; otherwise, the judgment will be reversed and the case remanded for a new trial.’ 786 So.2d at 485.
“More recently, in Orkin Exterminating Co. v. Jeter, 832 So.2d 25 (Ala.2001), we held that a punitive-damages award of approximately 10% of the corporate defendant’s net worth, ‘from misconduct during a single transaction not involving loss of life or limb,’ 832 So.2d at 42, weighed in favor of finding the award excessive.
“As recounted in Robbins [v. Sanders, 890 So.2d 998 (Ala.2004) ], Robbins’s wrongful conduct was extremely reprehensible and extended over a long period. Even though his wrongful conduct directed toward the Baileys during their lifetimes cannot be directly considered in assessing the reprehensibility of his conduct toward their subsequently established estates, that earlier conduct is relevant in demonstrating an unbroken pattern of intentional wrongful conduct. We recognize that the United States Supreme Court has stated that the degree of reprehensibility is ‘the most important indicium of the reasonableness of a punitive damages award’ and that it was important in that regard whether the harm resulted from intentional malice, trickery, or deceit, as opposed to mere accident. Gore, 517 U.S. at 575, 116 S.Ct. 1589; State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).
“Although, as noted, we expressed the opinion in Tapley that ‘[i]n the rarest cases involving the most egregious conduct, juries should be entitled to punish defendants so severely as to destroy them,’ 546 So.2d at 377, we have never approved the application of that concept in an actual case and, in Williams, supra, despite the existence of reprehensible conduct, we concluded that a negative net worth resulting from the size of the compensatory-damages award necessitated the remittitur of all punitive damages. Payment in full of the compensatory damages in this case will destroy Robbins financially and, as we stated in Williams, 786 So.2d at 482, quoting Green Oil Co. v. Hornsby, 539 So.2d at 222, punitive damages ‘must not exceed an amount that would accomplish society’s goals of punishment and deterrence.’
“Accordingly, as we did in Williams, we hold that because Robbins has shown that he will have a large negative net worth after payment of a substantial, but nonetheless incomplete, portion of the compensatory damages, he has shown that any award of punitive damages is excessive, and we are obliged to order a remittitur of all punitive damages; otherwise, the judgment will be reversed and the case remanded for a new trial.”
Robbins, 927 So.2d at 790-91.
Because the punitive damages awarded against the defendants exceed the amount necessary to accomplish society’s goals of punishment and deterrence — indeed, affir- *887 manee of those amounts will financially devastate the defendants — I conclude that the trial court erred in denying the motions for remittitur.

. To further clarify, I do not conclude that the affidavit statements as to the net worths of the defendants is "unimpeachably true.” 88 So.3d at 878. The truth of those statements were not unimpeachable, they merely were not impeached. As such, I accept them as accurate for purposes of this court’s de novo review of the trial court's judgment denying the motions for remittitur.